[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 611.]

THE STATE EX REL. BOARD OF COUNTY COMMISSIONERS OF ATHENS COUNTY ET AL., APPELLANTS, *v.* BOARD OF DIRECTORS OF THE GALLIA, JACKSON, MEIGS, VINTON JOINT SOLID WASTE MANAGEMENT DISTRICT ET AL., APPELLEES.

[Cite as *State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Directors*, 1996-Ohio-68.]

*Mandamus to compel Board of Directors of the Gallia, Jackson, Meigs, Vinton Joint Solid Waste Management District to comply with R.C. 343.012(B)— Writ denied, when.*

(No. 95-1274—Submitted May 7, 1996—Decided June 19, 1996.)

APPEAL from the Court of Appeals for Jackson County, No. 93CA730.

---

{¶ 1} In February 1989, the boards of county commissioners of Athens, Gallia, Hocking, Jackson, Meigs, and Vinton Counties entered into an agreement establishing a joint solid waste management district. The members of the boards of county commissioners of the foregoing counties comprised the members of the board of directors of the six-county district.

{¶ 2} The February 1989 agreement provided that if fees collected by the six-county district were insufficient, the counties would share all operating costs and expenses incurred by the district in the same proportion that the census populations of the respective counties bear to the total census population of the six counties. Based on the foregoing, Athens and Hocking Counties were responsible for approximately forty-six percent of the six-county district's operating costs and expenses.

{¶ 3} The General Assembly subsequently enacted Sub.H.B. No. 723, effective April 1993, which provided, *inter alia*, a one-time opportunity for solid

waste management districts to initiate changes in district composition independent of the periodic submission of amended solid waste management plans. Title to Sub.H.B. No. 723, 144 Ohio Laws, Part IV, 6244. In April 1993, pursuant to Section 5 of Sub.H.B. No. 723, *id.* at 6355, and R.C. 343.012, appellants, the Boards of County Commissioners of Athens and Hocking Counties, adopted resolutions requesting the withdrawal of their counties from the six-county district in order to form their own joint solid waste management district. The resolutions specified that the withdrawals would be in the best interest of Athens and Hocking Counties.

{¶ 4} Under R.C. 343.012(B), the proposed withdrawal of Athens and Hocking Counties would not be effective without the consent of the boards of county commissioners of the other counties forming the six-county district. In a letter dated April 1993, the Vinton County Commissioners advised that they would not consider Hocking County's request for withdrawal from the six-county district until they knew exactly what Hocking County wanted from the six-county district. In a written reply, the Athens and Hocking County Commissioners requested that the six-county district pay all expenses up to $50,000 involved in the development and ratification of a solid waste management plan for the proposed Athens-Hocking solid waste management district.

{¶ 5} In June 1993, the six counties entered into an agreement that provided:

"1. The Counties of Gallia, Jackson, Meigs, and Vinton agree to the withdrawal of Athens and Hocking Counties from the Athens, Gallia, Hocking, Jackson, Meigs, and Vinton Joint Solid Waste Management District and hereby agree to take all action necessary to permit the withdrawal of Athens and Hocking Counties from Athens, Gallia, Hocking, Jackson, Meigs, and Vinton Joint Solid Waste Management District;

"2. Athens and Hocking Counties shall receive a sum not to exceed $50,000.00 from the Athens, Gallia, Hocking, Jackson, Meigs, and Vinton Joint

Solid Waste Management District, for invoices that relate directly to the planning and ratification process of the Athens and Hocking Counties' Plan which sum is payable on the date that the withdrawal becomes final and the Athens, Gallia, Hocking, Jackson, Meigs, and Vinton Joint Solid Waste Management District is dissolved, provided that the Counties of Gallia, Jackson, Meigs, and Vinton have formed a Joint Solid Waste Management District and obtained ratification of a Solid Waste Management Plan;

"3. Athens County and Hocking County, jointly and severally, release and forever discharge the Athens, Gallia, Hocking, Jackson, Meigs, and Vinton Joint Solid Waste Management District, their successors and/or assigns, from all debts, claims, demands, damages, actions, causes of action whatsoever, past, present or future which can or may ever be asserted;

"4. The parties hereto, pursuant to Section 343.012(B) of the Ohio Revised Code, agree that the proposed division of assets of the Athens, Gallia, Hocking, Jackson, Meigs, and Vinton Joint Solid Waste Management District including, but not limited to, funds of [*sic*, on] hand, credits, and real and personal property is equitable, is consistent with the agreement to establish and maintain the district and the prior contributions of Athens and Hocking Counties."

{¶ 6} Pursuant to the agreement, the boards of county commissioners of each of the six counties adopted resolutions approving the withdrawal of Athens and Hocking Counties from the six-county district. The resolutions stated that "an agreement has been produced to provide for the orderly division of assets and liabilities should the withdrawal become effective ***."

{¶ 7} In December 1993, the Director of the Ohio Environmental Protection Agency approved the joint solid waste management plans submitted by the Athens-Hocking and Gallia, Jackson, Meigs, and Vinton joint districts. In the same month, the chairman of the board of directors of the six-county district, Hocking County Commissioner Robert E. Daubenmier, twice requested a meeting in order to

ascertain, apportion, and order a division of the six-county district assets pursuant to R.C. 343.012(B). A December 17 meeting lacked the quorum necessary to conduct business. Daubenmier canceled a subsequent meeting scheduled for December 27 after he received letters from the commissioners of Gallia, Jackson, Meigs, and Vinton Counties expressing their view that the June 1993 agreement executed by the six counties had already resolved the asset division issue. According to a December 1993 financial report for the six-county district, the balance in the main and escrow accounts totaled approximately $528,000. The June 1993 agreement had given Athens and Hocking Counties up to $50,000 to prepare their joint solid waste management plan for their new two-county district.

{¶ 8} Appellants, the Boards of County Commissioners of Athens and Hocking Counties, filed a complaint in the Court of Appeals for Jackson County to compel appellee, the Board of Directors of the Gallia, Jackson, Meigs, Vinton Joint Solid Waste Management District, to comply with R.C. 343.012(B) by scheduling a meeting and ordering an apportionment of the predecessor six-county district's assets on an equitable basis consistent with the February 1989 agreement establishing the six-county district and the prior contributions of Athens and Hocking Counties. Appellants also requested that the fiscal officers of the six-county district disburse this equitable share of the six-county district's assets to Athens and Hocking Counties. After the parties submitted stipulations and depositions, the court of appeals denied the writ.

{¶ 9} The cause is now before this court upon an appeal as of right.

———————————

*Porter, Wright, Morris & Arthur, Anthony J. Celebrezze, Jr., Janet J. Henry* and *Virginia E. Richards*, for appellants.

*Ochsenbein, Cole & Lewis* and *William S. Cole*, for appellee Board of Directors of the Gallia, Jackson, Meigs, Vinton Joint Solid Waste Management District.

*Per Curiam.*

**{¶ 10}** Appellants assert that the court of appeals erred in denying the requested writ of mandamus. The court of appeals determined that appellee district board did not possess a clear legal duty pursuant to R.C. 343.012(B) to ascertain, apportion, and equitably divide the assets of the six-county district. The court of appeals concluded that the district board had substantially complied with R.C. 343.012(B). In so holding, the court of appeals declined to address the issue of whether appellants possessed an adequate remedy in the ordinary course of law.

**{¶ 11}** As a preliminary matter, the appellee board asserts that appellants are not entitled to a writ of mandamus because appellants possess an adequate remedy at law, *i.e.*, an action to vacate the counties' June 1993 contract. See R.C. 2731.05 (writ of mandamus will not be issued when there is a plain and adequate remedy in the ordinary course of law). However, it is evident that appellants seek to enforce R.C. 343.012(B). While mandamus may not ordinarily be employed as a substitute for an action at law to recover money, underlying public duties having their basis in law may be compelled by a writ of mandamus. *State ex rel. Levin v. Schremp* (1995), 73 Ohio St.3d 733, 735, 654 N.E.2d 1258, 1260.

**{¶ 12}** In addition, although a writ of mandamus cannot issue to control a public body's exercise of discretion, it can be issued to compel the public body to exercise such discretion when it has a clear legal duty to do so. See *State ex rel. Huntington Ins. Agency, Inc. v. Duryee* (1995), 73 Ohio St.3d 530, 534, 653 N.E.2d 349, 354. Mandamus is also appropriate to correct any abuse of discretion in the proceedings of the district board. See, *e.g.*, *State ex rel. McMaster v. School Emp. Retirement Sys.* (1994), 69 Ohio St.3d 130, 133, 630 N.E.2d 701, 704-705; *State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections* (1994), 70 Ohio St.3d 413, 414, 639 N.E.2d 78, 79. Based on the foregoing, appellants properly sought a writ of

mandamus to compel the district board to comply with R.C. 343.012(B), since appellants do not possess an adequate remedy in the ordinary course of law.

{¶ 13} As to the remaining prerequisites for a writ of mandamus, *i.e.*, clear legal right and clear legal duty, appellants contend that the court of appeals erred in concluding that the district board had complied with R.C. 343.012(B). R.C. 343.012(B) provides:

"*** Upon the withdrawal of a county from a joint district, the board of directors shall ascertain, apportion, and order a division of the funds on hand, credits, and real and personal property of the district, either in money or in kind, on any equitable basis between the district and the withdrawing county consistent with the agreement to establish and maintain the district entered into and ratified under division (A) of section 343.01 of the Revised Code and the prior contributions of the withdrawing county."

"In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *** In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished." *State v. S.R.* (1992), 63 Ohio St.3d 590, 594-595, 589 N.E.2d 1319, 1323. Under R.C. 343.012(B), after the withdrawal of counties from a joint solid waste management district, the board of directors of the district must (1) ascertain, (2) apportion, and (3) order an equitable division of certain assets of the district consistent with the initial agreement establishing the district and prior contributions of the withdrawing counties.

{¶ 14} Upon withdrawal, the district board must initially "ascertain" the funds on hand, credits, and real and personal property of the district. In that "ascertain" is not defined in R.C. Chapter 343, it must be accorded its usual, normal or customary meaning. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 584, 651 N.E.2d 995, 998; R.C. 1.42. "Ascertain" means "to render certain or definite." Black's Law Dictionary (6 Ed.1990) 114.

6

{¶ 15} The minutes of the six-county district board's 1993 meetings reveal no ascertainment of the district assets specified in R.C. 343.012(B). Jackson County Commissioner Robert Willis conceded that the June 1993 meeting minutes did not reflect any discussion of the nature, extent, or amount of the six-county district's assets other than a brief reference to the counties' June 1993 agreement. The counties' June 1993 agreement merely stated that the counties "now desire to ascertain, ap[p]ortion and order a division" of the district assets but did not evidence any actual ascertainment of district assets.

{¶ 16} The court of appeals relied on evidence that the counties had access to district balance sheets and financial information to conclude that the six-county board substantially complied with the requirement of R.C. 343.012(B) to ascertain district assets. However, Willis admitted that without the district fiscal officers present at the board's June 11, 1993 meeting, the board would not have had access to any comprehensive financial reports. Additionally, Gallia County Commissioner Harold Montgomery testified that the district balance sheets merely showed the amounts appropriated for the use of the district and did not reflect the revenues received by the district. Finally, the court of appeals itself noted that the district balance sheets did not include all of the pertinent assets. Accordingly, it is evident that the district board did not comply with the R.C. 343.012(B) requirement of ascertaining district assets.

{¶ 17} The court of appeals further concluded that the six-county board substantially complied with the R.C. 343.012(B) requirements of apportionment and equitable division of district assets. The court of appeals determined that the division, which was based on the district board's December 1993 financial report and which gave appellants less than ten perecent of the six-county district's assets, was equitable because appellants secured the remaining counties' consent to their withdrawal by promising to limit their demands to a maximum of $50,000, which is what they received.

**{¶ 18}** The court of appeals erred in so holding for the following reasons. Initially, R.C. 343.012(B) presupposes the remaining counties' consent to the withdrawal of other counties prior to the imposition of the specified duties, which only arise "[u]pon the withdrawal of a county from a joint district ***." Therefore, the consent of the remaining counties is not considered in determining the existence of a duty to equitably divide district assets. As appellants note, consent to withdrawal is not one of the assets specified in R.C. 343.012(B) ("funds on hand, credits, and real and personal property of the district").

**{¶ 19}** Second, the equitable division of district assets must be consistent with the counties' initial agreement to establish and maintain the district and the prior contributions of the withdrawing counties. R.C. 343.012(B). The record discloses a recitation in the counties' June 1993 agreement that the district board considered the counties' original agreement and the prior contributions of Athens and Hocking Counties. However, according to the counties' 1989 agreement, appellants were responsible for approximately forty-six percent of the six-county district's costs and operating expenses if the district fees were insufficient to cover these costs and expenses. Receiving less than ten percent of the district assets under these circumstances does not appear equitable for purposes of R.C. 343.012(B).

**{¶ 20}** Based on the foregoing, the court of appeals erred in holding that the district board substantially complied with R.C. 343.012(B). However, a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309.

**{¶ 21}** Appellees pled several affirmative defenses in their answer to appellants' amended complaint, including waiver. Waiver is a voluntary relinquishment of a known right. *State ex rel. Ryan v. State Teachers Retirement Sys.* (1994), 71 Ohio St.3d 362, 368, 643 N.E.2d 1122, 1128. "'As a general rule, the doctrine of waiver is applicable to all personal rights and privileges, whether

8

secured by contract, conferred by statute, or guaranteed by the Constitution, provided that the waiver does not violate public policy.'" *Sanitary Commercial Serv., Inc. v. Shank* (1991), 57 Ohio St.3d 178, 180, 566 N.E.2d 1215, 1218, quoting *State ex rel. Hess v. Akron* (1937), 132 Ohio St. 305, 307, 8 O.O. 76, 77, 7 N.E.2d 411, 413.

{¶ 22} In *Shank, supra*, we held that a party aggrieved by an order from the Director of Environmental Protection could waive his statutory right to appeal by entering into a settlement agreement supported by sufficient consideration. Similarly, in the case at bar, appellants Athens and Hocking Counties entered into the June 1993 agreement with the remaining four counties. The agreement specifically referred to the R.C. 343.012(B) division of district assets and provided that Athens and Hocking Counties "release and forever discharge the Athens, Gallia, Hocking, Jackson, Meigs, and Vinton Joint Solid Waste Management District, their successors and/or assigns, from all debts, claims, demands, damages, actions, causes of action whatsoever, past, present or future which can or may ever be asserted."

{¶ 23} Six-county district Board Chairman Daubenmier conceded that the plain language of the counties' June 1993 agreement waived any claim that the withdrawing counties possessed. The agreement was signed by all of the commissioners of Athens and Hocking Counties as well as by their respective counsel. It was supported by sufficient consideration, *i.e.*, the consent of the remaining four counties to the withdrawal. Without the withdrawing counties' agreement to accept a maximum potential amount of $50,000 as the proposed R.C. 343.012(B) division of district assets, the remaining counties would not have consented to their withdrawal.

{¶ 24} Further, as the court of appeals determined, the June 1993 agreement was not against public policy. See *Gugle v. Loeser* (1944), 143 Ohio St. 362, 28 O.O. 318, 55 N.E.2d 580, paragraph one of the syllabus ("Agreements voluntarily

and fairly made between competent persons are usually valid and enforceable, and the principle that agreements opposed to public policy are not enforceable should be applied cautiously and only in circumstances patently within the reasons on which that doctrine rests."). Although the withdrawing counties did not receive what they might have been entitled to under a division of district assets pursuant to R.C. 343.012(B), their resolutions confirmed that their withdrawal from the six-county district was in their best interests. There is nothing in R.C. Chapter 343 which precludes withdrawing counties from waiving their right to ascertainment, apportionment, and equitable division of district assets under R.C. 343.012(B) in order to receive the remaining counties' consent to their withdrawal. Cf. *Shank, supra*, 57 Ohio St.3d at 181, 566 N.E.2d at 1218 (nothing in Ohio Constitution or in R.C. Chapter 3745 bars waiver of right to appeal). In addition, settlement agreements such as the June 1993 agreement executed by the parties here are valid, enforceable, and highly favored in the law. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.* (1996), 74 Ohio St.3d 501, 502, 660 N.E.2d 431, 432.

{¶ 25} For the foregoing reasons, the court of appeals properly denied the writ of mandamus. It would be incongruous to permit appellants, who voluntarily signed the agreement while represented by counsel, to obtain the benefits of the June 1993 agreement (the consent of the remaining counties to their withdrawal from the six-county district plus up to $50,000 in planning expenses for their new district) without accepting the accompanying burdens (release of any claims, including those under R.C. 343.012[B], to further district assets). See *State ex rel. Johnson v. Cleveland Hts./Univ. Hts. School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 189, 192, 652 N.E.2d 750, 752. Finally, as the court of appeals noted, "[i]f the contract is invalid, then the consents are invalid *** [and] the clear legal duty required of respondents under R.C. 343.012(B) to equitably divide the assets would not arise until the consents were obtained."

{¶ 26} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

————————————