JOURNAL ENTRY and OPINION
{¶ 1} Appellant Thomas Vail, Jr., appeals the judgment of divorce awarding him a parcel of land and ordering him to pay his wife, Julia Vail, her interest. Vail assigns the following errors for our review:
 {¶ 2} "I. The trial court erred by failing to implement the parties' prenuptial agreement."
 {¶ 3} "II. The trial court erred and abused its discretion when valuing the parties' vacant land by utilizing a hypothetical real estate appraisal that did not consider deed restrictions."
 {¶ 4} Having reviewed the record and pertinent law, we reverse the judgment of the trial court. The apposite facts follow.
 {¶ 5} In December 1984, Thomas Vail, Jr. was twenty-nine years old, an attorney, and the life income beneficiary of a trust established for him by his great grandmother. He also expected to receive a very substantial distribution of principal from trusts of which his mother was the life income beneficiary. After Vail Jr.'s death, the various trusts would pass to his children. Appellee Julia Vail was twenty-five years old, and also an attorney.
 {¶ 6} Prior to their marriage, the parties entered into a prenuptial agreement. The agreement states in pertinent part:
 {¶ 7} "In the event of a divorce, dissolution * * * no alimony, support or separate maintenance, temporary or permanent, shall be awarded to either party. Each of the parties agrees that all items of property, real and personal, tangible and intangible, (i)titled in the names of both of the parties * * * shall be divided equally between the parties; * * *
 {¶ 8} "Any of the foregoing assets that the parties cannot mutually agree to divide shall be sold and the proceed divided evenly between the parties * * *."[1]
 {¶ 9} Attached, and made part of the prenuptial agreement, was a statement of the assets owned by each party. At the date of the agreement, Mr. Vail's assets included a brokerage account at City Trust Company valued at $65,000; a checking account with a balance of $55,000; a 1956 Mercedes 300 SL automobile, valued at $50,000; a 1981 Alfa Romeo GTV6 automobile, valued at $8,000; and, a Honda VF 500F motorcycle, valued at $3,000. Mrs. Vail disclosed assets of jewelry and personal effects valued at $20,000; a 1984 Volkswagon GTI automobile valued at $8,000, and, a checking account with a balance of $2,000.
 {¶ 10} The parties were married on January 12, 1985, and two children were born as issue of the marriage; namely Thomas (DOB: 6-16-89), and Robert, (DOB: 4-2-93).
 {¶ 11} In June 2001, Mr. Vail's parents gifted to the parties a nine acre tract of land in Hunting Valley, Ohio. This tract of land is the subject of the instant appeal. The record reveals the property is completely surrounded by approximately three hundred acres of Mr. Vail's parents' property. Mr. Vail's parents reserved an option to purchase the gifted property if there was the possibility of a transfer to a non-lineal descendant. The deed states in pertinent part:
 {¶ 12} "Grantors shall have the option to purchase the entire foregoing real property from the Grantees at the price upon which Grantor and Grantees agree, or, if they are unable to agree, at the price determined by an independent appraisal, as hereinafter described; * * *
 {¶ 13} "If, in accordance with this contingent option, Grantors and Grantees cannot agree on the price within sixty (60) days after the earlier to occur of (i) notice given by Grantees to Grantors of the intention to transfer the property or (ii) a transfer of title to the property, then the price shall be determined by the head of the appraisal department of Collier's International, Cleveland, Ohio, * * *"
 {¶ 14} On March 13, 2002, Mrs. Vail filed for divorce, attached a copy of the prenuptial agreement to the complaint and prayed for a division of the property consistent with the agreement. Mr. Vail also attached a copy of the prenuptial agreement to his answer, his third party complaint and his counterclaim for divorce and urged the court to enforce the terms of the agreement.
 {¶ 15} The parties stipulated to the resolution of nearly every issue in the divorce. They adhered to the prenuptial agreement by stipulating that neither party would pay spousal support to the other and allocating their separate and marital property as defined by the agreement.
 {¶ 16} The only item of marital property not allocated by stipulation was the aforementioned vacant land gifted to them by Mr. Vail's parents. The record revealed the parties were unable to agree on how to divide the property. Mr. Vail wanted the property to be sold pursuant to the prenuptial agreement, while Mrs. Vail wanted the property to be awarded to Mr. Vail and receive cash for her interest.
 {¶ 17} The record also revealed the parties were unable to agree upon the value of the property. Consequently, on July 31, 2002, the parties entered into an agreed judgment allowing the court to appoint Thomas Costello to appraise the subject property.
 {¶ 18} In accordance with the deed restriction attendant with the transfer of the property to the parties, the record reveals Mr. Vail's father hired Lawrence Kell of Collier International to also appraise the subject property.
 {¶ 19} The case proceeded to trial on January 29, March 4 and 5, 2003, on the sole issue of the disposition of the nine acre tract of land in Hunting Valley.
 {¶ 20} At trial, Thomas Costello testified he appraised the subject property for $900,000. He stated he submitted a hypothetical report, because he did not consider the deed restriction. Lawrence Kell opined the fair market value was $340,000. He stated he considered the deed restriction, and that of the nine acre tract of land, only one acre is actually buildable land Kell also testified the county auditor's office estimated the property value at $315,000.
 {¶ 21} Mrs. Vail testified she worked as an attorney throughout the marriage while Mr. Vail left the practice of law to pursue other business endeavors. She stated Mr. Vail's parents gave them the subject property to build a house. Further, she testified $2,000,000 from a trust his parents owned were designated for this purpose.
 {¶ 22} Mr. Vail testified regarding the transfer of the subject property. He stated it was a dream of his parents to have one of their children live on the property. Consequently, a family agreement was drafted to have $2,000,000 designated from a trust, which he was the principal beneficiary, to build or purchase a house. He stated he wanted to build on the property, thus, prior to the transfer he utilized monies from the trust for architectural expenses, soil testing and other general improvements.
 {¶ 23} He stated his parents wanted to transfer the property to only him, and not his wife. However, when he told his wife, she informed him she no longer wanted to build the house. He said by this time he had already spent a significant amount of money anticipating building the house. He said if he did not build he would lose the money he had already spent. According to Mr. Vail, after constant pressure from his wife's family he relented to the transfer prior to discovering his wife was having an affair.[2]
 {¶ 24} The trial court subsequently found the value of the property to be $900,000, awarded the property to Mr. Vail, and ordered him to pay Mrs. Vail $450,000. Mr. Vail now appeals.
 {¶ 25} In his first assigned error, Mr. Vail, argues the trial court erred by failing to implement the parties' prenuptial agreement by ordering him to retain the Hunting Valley property.
 {¶ 26} A prenuptial agreement is a contract entered into between a man and a woman in contemplation, and in consideration, of their future marriage. The property rights and economic interests of either the prospective wife or husband, or both, are determined and set forth, with the agreements often including provisions concerning the distribution of property upon divorce.
 {¶ 27} Although prenuptial agreements are not per se invalid, they must meet certain minimum standards of good faith and fair dealing.[3] Upon judicial review of a prenuptial agreement, it must meet general tests of fairness and must be construed within the context that by virtue of their anticipated marital status, the parties are in a fiduciary relationship to one another.[4] Accordingly, the parties are under a mandatory duty to act in good faith with a high degree of fairness and disclosure of all circumstances which materially bear on the prenuptial agreement.[5]
 {¶ 28} Prenuptial agreements are valid and enforceable in Ohio (1) if they have been entered into freely without fraud, duress, coercion or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce.[6]
 {¶ 29} The sole consideration for a reviewing court in its analysis of a trial court's division of property in the context of a divorce is whether there has been an abuse of discretion by the trial court.[7] An abuse of discretion connotes more than an error of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court in granting such motion.[8]
 {¶ 30} In the case sub judice, the validity of the prenuptial agreement is not challenged. Both parties to the instant action attached a copy of the agreement to their initial and responsive pleadings, and prayed for its enforcement. In so doing, they consented to the division of the marital property according to the dictates of the prenuptial agreement. Further, as evident from the various stipulations prior to trial, the parties adhered to the prenuptial agreement in resolving all issue of their divorce except for the nine acre parcel of land at issue in this appeal.
 {¶ 31} We find the trial court erred by not abiding by the terms of the prenuptial agreement in dividing the property. The agreement provided for an equal division of jointly held property, and stipulated if the parties failed to agree on the disposition of such property, then the property must be sold and the proceeds divided equally. The land was titled to both parties and the necessity of a trial evinced the parties' failure to agree on the disposition. This being the case, the trial court should have ordered the property sold and the proceeds divided equally between the parties.
 {¶ 32} Mrs. Vail argues Mr. Vail waived the terms of the prenuptial agreement by agreeing to having the property appraised by the court appointed appraiser. We are unpersuaded. A waiver is a voluntary relinquishment of a known right.[9] It applies generally to all personal rights and privileges.[10] Waiver assumes one has an opportunity to choose between either relinquishing or enforcing the right. A waiver may be enforced by the person who had a duty to perform and who changed his or her position as a result of the waiver.[11]
 {¶ 33} A review of the journal entry appointing an appraiser is devoid of any indication the parties were waiving the terms of the prenuptial agreement. The parties adhered to the agreement prior to trial to resolve every issue except that pertaining to the tract of land Finally, at trial Mrs. Vail testified she stipulated that the prenuptial agreement was valid and enforceable.[12] Accordingly, we sustain Mr. Vail's first assigned error.
 {¶ 34} This matter is remanded to the trial court with specific instruction that it should follow the dictates of the prenuptial agreement.
 {¶ 35} Having sustained Mr. Vail's first assigned error, we need not address his second assigned error as it is moot.[13]
Judgment reversed and remanded.
It is, therefore, ordered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Rocco, J., concur.
[1] Prenuptial Agreement P. 4.
[2] Tr. at 348.
[3] Zimmie v. Zimmie (1984), 11 Ohio St.3d 94, 98.
[4] Id.
[5] Gross v. Gross, (1994) 11 Ohio St.3d 99; Cohen v. Estateof Cohen (1986), 23 Ohio St.3d 90, 92.
[6] Gross, supra at paragraph two of the syllabus.
[7] Kaechele v. Kaechele (1988), 35 Ohio St.3d 93.
[8] Worthington v. Worthington (1986), 21 Ohio St.3d 73.
[9] State ex rel. Athens Cty. Bd. of Commrs. v. Gallia,Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. ofDirectors (1996), 75 Ohio St.3d 611, 616.
[10] Id., citing Sanitary Commercial Serv., Inc. v. Shank
(1991), 57 Ohio St.3d 178, 180.
[11] Andrews v. State Teachers Retirement Sys. Bd. (1980),62 Ohio St.2d 202, 205.
[12] Tr. at 125.
[13] App.R. 12(A)(1)(c).