[Cite as *Hollish v. Maners*, 2011-Ohio-4823.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JOSEPH C. HOLLISH | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2011CA000005 |
| JAY R. MANERS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Knox County Court of
                                  Common Pleas, Case No. 09AC12-0734


JUDGMENT:                         AFFIRMED


DATE OF JUDGMENT ENTRY:           September 21, 2011


APPEARANCES:

For Appellant:                          For Appellee:

JOHN S. DILTS                           KENNETH E. LANE
28 S. Park St.                          5 N. Gay St., Suite 220
Mansfield, OH 44902                     P.O. Box 888
                                        Mount Vernon, OH 43050

*Delaney, J.*

{¶1} Defendant-Appellant, Jay R. Maners, appeals the January 27, 2011 judgment of the Knox County Court of Common Pleas in this breach of contract action. Plaintiff-Appellee is Joseph C. Hollish.

## STATEMENT OF THE FACTS AND CASE

{¶2} On December 9, 2009, Hollish filed a complaint on account against Maners. Hollish alleged the parties entered into a contract on December 31, 1995 for the sale of a business where Maners agreed to pay Hollish $285,500 per a payment arrangement described in the contract. Hollish alleged Maners breached the contract by his failure to pay and owed $72,692.62, plus interest at 7.5% from December 2, 2003.

{¶3} Maners answered the complaint on January 4, 2010. Maners raised as affirmative defenses: (1) laches, (2) estoppel, (3) waiver, (4) failure to state a claim upon which relief can be granted, and (5) failure to join a necessary party, Bobcat of Columbus, Inc.

{¶4} The case proceeded to a bench trial on December 6, 2010. The following evidence was adduced at trial. Hollish and Maners were the only witnesses.

{¶5} Hollish was the owner of Taylor Rental Center located in Mount Vernon, Ohio. On December 31, 1995, Hollish and Maners entered into a contractual agreement where Maners purchased Taylor Rental Center from Hollish. Pursuant to the terms of the contract, Maners purchased the business for $285,500. Maners was to pay $45,000 in cash to Hollish on January 2, 1996 and Hollish agreed to finance the

balance of $240,500 over ten years at an interest rate of 7.5%. Maners was to make monthly payments to Hollish in the amount of $2,908.30, starting April 1, 1996.

{¶6} To secure his obligation to Hollish, Maners agreed to grant Hollish a security interest in all of the assets of the business, including accounts receivable and after acquired property. Maners also granted Hollish a security interest or lien upon all of his personal assets, except his house, the lot on which it sat, and the furnishings within. Hollish testified that he never filed a UCC-II statement to secure his interest in the assets.

{¶7} Maners made timely payments on the contract to Hollish.

{¶8} In March 2000, Maners sold the Taylor Rental Center to Bobcat of Columbus, Inc. Maners briefly spoke to Hollish about the sale to Bobcat before the sale was completed, but the three parties did not enter into any contractual agreements regarding the impact of the sale on the December 31, 1995 contract and the payment arrangement between Maners and Hollish. The contract between Maners and Bobcat was not entered into evidence. Maners stated that he called Hollish on behalf of Bobcat with an offer of a lump sum to pay off the contract, but Hollish rejected the offer. Hollish never spoke to a representative of Bobcat before the sale of the business. Maners testified that he was unaware that Bobcat had not spoken to Hollish prior to the sale because a financial officer with Bobcat told Maners he had taken care of all the arrangements.

{¶9} After the sale of Taylor Rental Center to Bobcat and beginning March 2000, Hollish received the monthly payment under the terms of the December 31, 1995 contract directly from Bobcat. Bobcat made approximately 3 ½ years of payments to

Hollish.  In December 2003, Bobcat filed for bankruptcy protection.  Hollish no longer received payments from Bobcat.

{¶10}  In Bobcat's bankruptcy filings, Hollish was listed as a creditor.  Hollish did not pursue any action within the bankruptcy proceeding.

{¶11}  On June 1, 2004, Hollish sent Maners and his wife a letter stating:

{¶12}  "Jay [Appellant] asked me [Appellee] to report on the status of the payments being made to me by Bobcat of Columbus.  The last payment made was in December, 2003.  (check no. 220838 Dec. 9, 2003).  That means that there are 26 payments remaining, the last one originally scheduled by our agreement to be made on March 1, 2006.

{¶13}  "I don't know exactly what the results of the Bobcat bankruptcy will be; perhaps you don't know either.  I do know that getting screwed big-time can really hurt and cause people to do uncharacteristic things for reasons of self-preservation.  Myself, I am worried about getting the balance owed me, and even further along, what about that never-ending lawsuit by Servistar against you and me?

{¶14}  "I understand you are in difficult times right now so I am not anxious to make any demands on you.  I hope your new venture of Ohio Rentals succeeds better than your most optimistic expectations.  Please keep me posted on any news that might have some effect on us."  (Trial Exhibit A).

{¶15}  Maners testified that he interpreted the letter to mean that Hollish was not demanding money from him.  Hollish testified that he wrote the letter because he wanted to encourage Maners, because in his experience, he knew when a party declares bankruptcy and owes money, it is difficult to get the debt repaid.  Hollish stated

it was not his intention to indicate that he was forgiving any debt that Maners may owe him.

{¶16} At the conclusion of the bench trial, the parties filed post-trial briefs. Maners argued in his post-trial brief the affirmative defenses of novation, waiver, and estoppel. On January 27, 2011, the trial court granted judgment to Hollish and against Maners. The trial court found damages in the amount of $72,049.69 and awarded that amount, plus interest at the rate of 7.5% per annum from December 2, 2003. The judgment entry was served on the parties by ordinary mail on January 27, 2011.

{¶17} On February 10, 2011, Maners filed a Civ.R. 52 request for findings of fact and conclusions of law. Hollish responded, arguing the Civ.R. 52 request was made later than seven days from the date of notice of the judgment and therefore untimely. The trial court agreed and denied the request.

{¶18} Maners filed a timely appeal of the January 27, 2011 judgment entry.

{¶19} Appellant raises two Assignments of Error:

{¶20} "I. THE COURT ERRED IN FINDING THE DEFENDANT/APPELLANT LIABLE TO THE PLAINTIFF/APPELLEE WITHOUT REFERENCE TO THE DEFENDANT/APPELLANT'S AFFIRMATIVE DEFENSES WHICH WERE PURSUED AND PROVEN AT TRIAL, INCLUDING WAIVER, ESTOPPEL, AND LATCHES [SIC].

{¶21} "II. THE COURT ERRED IN FINDING THAT THE PLAINTIFF/APPELLEE WAS NOT ESTOPPED FROM PURSUING THIS CLAIM DUE TO: (1) THE PLAINTIFF/APPELLEE'S FAILURE TO FILE HIS UCC-II AND FINANCING STATEMENTS AS REQUIRED BY THE PARTIES [SIC] CONTRACT AND OHIO REVISED CODE §1303.70; AND (2) THE LETTER SENT TO THE

DEFENDANT/APPELLANT AFTER THE BANKRUPTCY FILING OF BOBCAT OF COLUMBUS, STATING THE PLAINTIFF/APPELLEE WAS NOT LOOKING TO THE DEFENDANT/APPELLANT FOR THESE FUNDS."

**I., II.**

{¶22} We consider the first and second Assignments of Error together because Appellant noted in his brief that he was presenting the errors simultaneously to the Court.

{¶23} This matter was heard by the trial court without a jury. An appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the essential elements of the case. *C.E. Morris Co. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. "A reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate conclusions." *Hooten Equipment Co. v. Trimat, Inc.,* 4th Dist. No. 03CA16, 2004–Ohio– 1128, ¶ 7. We are to defer to the findings of the trier of fact because in a bench trial the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. *Seasons Coal Company, Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748, 621.

{¶24} Maners argues in his first Assignment of Error the trial court erred in finding him liable to Hollish without reference to his affirmative defenses, which Maners

contends were proven at trial. In the answer, Maners raised the affirmative defenses of laches, estoppel, waiver, failure to state a claim upon which relief can be granted, and failure to join a necessary party, Bobcat of Columbus, Inc. At trial and in Maners' post-trial brief, he argued that Hollish's claims were barred by the affirmative defenses of novation, waiver, and estoppel.

{¶25} Maners made an untimely request for findings of fact and conclusions of law pursuant to Civ.R. 52 and the trial court denied the same. Based on the lack of findings of fact and conclusions of law, we cannot say the trial court did not consider Appellant's affirmative defenses. However, we will review Maners' affirmative defenses based on the evidence presented to determine whether the trial court's finding in favor of Hollish was supported by competent, credible evidence. Maners has the burden of proof in establishing his affirmative defenses.

{¶26} Maners failed to address at the trial court level, and on appeal, the affirmative defenses of laches, failure to state a claim, and failure to join a necessary party. We therefore decline to address those affirmative defenses.

{¶27} Maners argued at trial and in his post-trial brief that a novation had occurred in this case. Maners did not assert novation in his answer or through an amended pleading. Novation is an affirmative defense. *Sheet Metal Workers Natl. Pension Fund v. Bryden House Ltd. Partnership* (1998), 130 Ohio App.3d 132, 719 N.E.2d 646. A novation "is created where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." *Swayne v. Beeble*

*Invests., Inc.*, 176 Ohio App.3d 293, 2008-Ohio-1839, 891 N.E.2d 1216, ¶22 citing *McGlothin v. Huffman* (1994), 94 Ohio App.3d 240, 244, 640 N.E.2d 598.

{¶28} The Ohio Supreme Court in *Jim's Steakhouse, Inc. v. Cleveland* (1998), 81 Ohio St.3d 18, 688 N.E.2d 506, provides for waiver of an affirmative defense if it is not raised in a pleading or an amended pleading. See Civ.R. 8. Because Maners did not assert novation as an affirmative defense in the pleadings, we find Maners has waived this issue pursuant to Civ. R. 8(C). In any event, the evidence presented at trial did not establish that a novation had occurred between Bobcat, Maners and Hollish.

{¶29} We next address Maners' affirmative defenses of waiver and estoppel. Maners argues Hollish waived his claim to funds under the December 31, 1995 contract and/or is estopped from pursuing a claim because Hollish was aware of Bobcat's bankruptcy and failed to take any action against Bobcat. Maners further argues in his second Assignment of Error, in part, Hollish was estopped from pursuing his claim against Maners because Hollish failed to file his UCC-II statements as required by the December 31, 1995 contract and R.C. 1303.70. Maners argues that if Hollish had filed his UCC-II statements to secure his interests in the assets of the business and Maners' personal assets, Hollish could have been made whole through the bankruptcy case.

{¶30} The December 31, 1995 contract states:

{¶31} "To secure Buyer's obligation to Seller, Buyer agrees to grant to Seller a security interest in all of the assets, including accounts receivable and after acquired property, of the business, together with a security interest or lien upon the following personal assets of the Buyer:

{¶32} "All personal assets excepting the Buyer's house, the lot on which it sits and the furnishings within."

{¶33} Equitable estoppel is an affirmative defense, as opposed to promissory estoppel, which is a cause of action. *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, 939 N.E.2d 891, ¶94. Equitable estoppel precludes recovery "'when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.'" *Ford Motor Credit Co.*, supra, citing *Doe v. Archdiocese of Cincinnati,* 116 Ohio St.3d 538, 2008-Ohio-67, 880 N.E.2d 892, ¶ 7, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 34, 641 N.E.2d 188.

{¶34} "A waiver is a voluntary relinquishment of a known right. *State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Directors* (1996), 75 Ohio St.3d 611, 616, 665 N.E.2d 202, 207. It applies generally to all personal rights and privileges. Id., citing *Sanitary Commercial Serv., Inc. v. Shank* (1991), 57 Ohio St.3d 178, 180, 566 N.E.2d 1215, 1218. Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right. A waiver may be enforced by the person who had a duty to perform and who changed his or her position as a result of the waiver. *Andrews v. State Teachers Retirement Sys. Bd.* (1980), 62 Ohio St.2d 202, 205, 16 O.O.3d 240, 242, 404 N.E.2d 747, 749." *Chubb v. Ohio Bur. Of Workers' Comp.* (1998), 81 Ohio St.3d 275, 1998-Ohio-628, 690 N.E.2d 1267.

{¶35} In his brief, Maners refers this Court to R.C 1303.70 to state that Hollish impaired the value of the collateral securing the December 31, 1995 contract and

therefore Maners' liability under the debt is discharged.  Pertinent to his argument, R.C. 1303.70(E) states:

{¶36} "(E) If the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an indorser or accommodation party having a right of recourse against the obligor is discharged to the extent of the impairment.  The value of an interest in collateral is impaired to the extent the value of the interest is reduced to an amount less than the amount of the right of recourse of the party asserting discharge or to the extent the reduction in value of the interest causes an increase in the amount by which the amount of the right of recourse exceeds the value of the interest.  The burden of proving impairment is on the party asserting discharge."

{¶37}  R.C. 1303.70(G) further states:

{¶38}   "(G) Under division (E) or (F) of this section, impairing value of an interest in collateral includes any of the following:

{¶39} "(1) Failure to obtain or maintain perfection or recordation of the interest in collateral;

{¶40} "(2) Release of collateral without substitution of collateral of equal value;

{¶41} "(3) Failure to perform a duty to preserve the value of collateral owed, under Chapter 1309. of the Revised Code or other applicable law, to a debtor or surety or other person secondarily liable;

{¶42} "(4) Failure to comply with applicable law in disposing of collateral."

{¶43} This Court has reviewed the record and the post-trial briefs.  At trial, Maners contended that Hollish waived or was estopped from pursuing his claim

because Hollish did not perfect his interest in the collateral through UCC filings. However, we find Maners is utilizing R.C. 1303.70 for the first time on appeal to state that Hollish impaired the collateral and the debt is discharged. This Court held in *Carrico v. Drake Constr.*, Stark App. No. 2005CA00201, 2006-Ohio-3138, ¶37:

{¶44} "Such arguments are barred by the doctrine of waiver for failure to raise these arguments before the trial court. 'It is well established that a party cannot raise any new issues or legal theories for the first time on appeal.' *Dolan v. Dolan,* Trumbull App. Nos. 2000-T-0154 and 2001-T-0003, 2002-Ohio-2440, at ¶ 7, citing *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629. 'Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process.' *Mark v. Mellott Mfg. Co., Inc.* (1995), 106 Ohio App.3d 571, 589, 666 N.E.2d 631."

{¶45} We will review Appellant's arguments as presented to the trial court and apply them to the facts in evidence to determine if the trial court's decision was supported by competent, credible evidence. We find the evidence presented in this case fails to establish estoppel or waiver. The December 31, 1995 contract contains no statement as to Hollish's obligation to file UCC-II statements to secure his interests in the assets that include Maners' personal assets. The facts in this case show Maners sold his interest in Taylor Rental Center to Bobcat without any contractual involvement of Hollish in the transaction. There is no evidence in the record that the December 31, 1995 contract was a commercial paper capable of being sold or transferred by Hollish or Maners, or that Bobcat became contractually obligated to Hollish to meet the terms of the contract thereby permitting Hollish to become involved in the bankruptcy

proceeding. Bobcat listed Hollish as a creditor in its bankruptcy case, but the facts show that while Bobcat was making payments to Hollish as stated in the contract, there was no underlying agreement between Hollish and Bobcat to assume Maners' contractual obligation.

{¶46} The burden is on the defendant to prove his affirmative defenses. The record in this case fails to clearly establish that Hollish gave up a known right by, as Maners argues, allowing Maners to sell the business to Bobcat. The casual business dealings between Maners and Hollish do not show equitable estoppel where Maners changed his position to his detriment in reliance upon Hollish's actions. We cannot say the trial court erred in finding in favor of Hollish based on the evidence presented.

{¶47} Maners also argues in his second Assignment of Error that Hollish was estopped from pursuing his claim against Maners because the June 1, 2004 letter stated that Hollish was not looking to Maners for the funds.

{¶48} The June 1, 2004 letter is recited within the Statement of the Facts. Both parties testified at trial as to their interpretation of the meaning of the letter. Hollish testified that in writing the letter, it was not his intention to indicate to Maners and his wife that he forgave the debt. (T. 20). Maners testified that he did not believe that Hollish was demanding money from him. (T. 33). As stated above, we defer to the trial court as the finder of fact and the weighing of the credibility of the witnesses' testimony. By the trial court's decision granting judgment to Hollish in the amount demanded in the complaint, we find the trial court determined Maners failed to demonstrate the affirmative defense of equitable estoppel as to the June 1, 2004 letter. There was competent, credible evidence to show that Hollish did not induce Maners to believe that

Hollish would never demand that Maners pay the debt under the December 31, 1995 contract. There was no further evidence presented at trial to show that Maners changed his position in reasonable reliance on the June 1, 2004 letter.

{¶49} Upon our review of the evidence, we find the trial court's decision to award judgment and damages to Hollish to be supported by competent, credible evidence. We therefore overrule Appellant's first and second Assignments of Error.

{¶50} The judgment of the Knox County Court of Common Pleas is affirmed.

By: Delaney, J.

Gwin, P.J. and

Wise, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

[Cite as *Hollish v. Maners*, 2011-Ohio-4823.]

IN THE COURT OF APPEALS FOR KNOX COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JOSEPH C. HOLLISH | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JAY R. MANERS | : | |
| | : | |
| | : | Case No. 2011CA000005 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Knox County Court of Common Pleas is affirmed.  Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE