OPINION *Page 2 
{¶ 1} The defendant-appellant, Deborah Herdman, appeals the judgment of the Marion County Common Pleas Court Family Division modifying the shared parenting plan. On appeal, Deborah argues that the trial court's decision was supported by insufficient evidence and was against the manifest weight of the evidence. For the reasons set forth herein, we affirm the judgment of the trial court.
 {¶ 2} On April 20, 2004, the plaintiff-appellee, G. Brent Herdman, filed a complaint for divorce. The decree of divorce, filed on November 15, 2004, incorporated a shared parenting plan for the parties' two minor children, [1] Jordan, d.o.b. 9/24/92, and Lauryn, d.o.b. 1/02/02. The parenting schedule agreed to by the parties was somewhat complicated and is best explained by use of the following demonstrative calendar:

Week Sunday Monday Tuesday Wednesday Thursday Friday Saturday
 1 Children Children Children Children Children Children Children
 with with with with with with with
 Deborah Deborah Deborah; Deborah Deborah Deborah; Brent
 Children Children
 with with
 Brent Brent
 4:00- starting
 9:00 at 4:00
 p.m. p.m.
2 Children Children Children Children Children Children Children
 with with with with with with with
 Brent Deborah Deborah; Deborah Deborah; Deborah; Deborah
 until Children Jordan Children
 9:00 with with with
 p.m. Brent Brent Brent
 4:00- 5:00- 4:00-
 9:00 9:00 10:00
 p.m. p.m. p.m.
3 Children Children Children Children Children Children Children
 with with with with with with with
 Deborah Deborah Deborah; Deborah Deborah; Deborah; Brent
 Children Lauryn Children
 with with with
 Brent Brent Brent
 4:00- 5:00- 4:00
 9:00 9:00 p.m.
 p.m. p.m.
4 Children Children Children Children Children Children Children
 with with with with with with with
 Brent Deborah Deborah; Deborah Deborah Deborah; Deborah
 until Children Children
 9:00 with with
 p.m. Brent Brent
 4:00- 4:00-
 9:00 10:00
 p.m. p.m.

The parties agreed to a separate summer schedule, which allowed each parent a full week of parenting time starting on Friday at 4:00 p.m. and ending the following Friday at 4:00 p.m. The parent who was not exercising parenting time for the week spent time with the children on Tuesday night from 4:00-10:00 p.m.
 {¶ 3} On April 18, 2006, the court modified the shared parenting plan pursuant to the parties' agreement. In particular, the Tuesday pick-up time was moved from 4:00 p.m. to 3:00 p.m., which required Brent to pick up Lauryn at *Page 4 
school instead of at Deborah's house after school. A few other times were adjusted as well, but the general schedule was left unchanged.
 {¶ 4} On November 21, 2007, Deborah filed a motion to terminate the shared parenting plan. On December 18, 2007, Brent filed a proposed shared parenting plan suggesting a year-round "week-on/week-off" arrangement like the one already in place for summers. Brent filed a motion to modify the shared parenting plan on December 21, 2007, referencing his previously filed proposal. Deborah apparently agreed that modification, rather than termination, of the shared parenting plan was appropriate and filed a motion to modify on January 9, 2008.
 {¶ 5} On January 28, 2008, the court referred the case to the family services coordinator, whose report was attached to the transcript of the June 18, 2008 hearing as Court Exhibit 1. The court also conducted an in-camera interview with the children on that date. At the hearing, Brent made two additional proposals, both of which were based on each party spending a "block" of time with the children. On June 26, 2008, the trial court filed its judgment entry adopting Brent's original proposal of a "week-on/week-off schedule. On an alternating basis, the children would reside with one parent from 4:00 p.m. on Friday until 4:00 p.m. on the following Friday. The parent who was "off for the week would spend time with the children on Tuesday from 4:00 p.m. until 8:00 *Page 5 
p.m. Deborah appeals the judgment of the trial court and raises one assignment of error for our review.[2]
 Assignment of Error The lower court erred and abused its discretion in determining it was in the children's best interest to modify the parties' shared parenting plan to an alternating weekly schedule when there was insufficient, credible evidence supporting its findings and the same was against the manifest weight of the evidence.
 {¶ 6} Generally, "R.C. 3109.04 governs the allocation of parental rights and responsibilities in divorce proceedings and requires the court to consider the children's best interest in determining custody."Erwin v. Erwin, 3d Dist. No. 14-04-37, 2005-Ohio-1603, at ¶ 7, citing R.C. 3109.04(B)(1). Before a trial court may modify the terms of a shared parenting plan under R.C. 3109.04(E)(2)(b), it must determine that a modification is in the best interests of the children. Fisher v.Hasenjager, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546. The allocation of parenting time is a "term" of a shared parenting plan, which is modifiable if the change is in the children's best interests. Id. at ¶ 29-33, 36. When reviewing the evidence before it, the trial court must consider R.C. 3109.04(F)(1)(a)-(j), which states:
 In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of *Page 6 a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of *Page 7 the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 7} A trial court's custody determination will not be reversed on appeal absent an abuse of discretion. Erwin, at ¶ 7, citing R.C. 3109.04(D); DeLevie v. DeLevie (1993), 86 Ohio App.3d 531, 539,621 N.E.2d 594; Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846; Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, at syllabus.
 The standard for abuse of discretion was laid out in the leading case of C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody cases in Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:
 "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a *Page 8 reviewing court. (Trickey v. Trickey [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)"
Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159. Such standard was adopted to prevent an appellate court from substituting its judgment for that of the trial court simply because it held a different opinion on the case. Id. The court stressed that assessments of credibility are best reserved to the trial courts because "there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." (Emphasis sic.). Id. at 419.
 {¶ 8} In its judgment entry, the trial court set forth a summary of the evidence adduced at hearing and noted several subsections of R.C. 3109.04(F)(1). Our review of the record indicates that the trial court's summary of the evidence is accurate. Brent testified that he agreed to the original shared parenting plan and the subsequent modification even though he had always believed the parties should have shared "week-on/week-off" parenting time. Deborah testified that the modified shared parenting plan had been successful. Both parties agreed that there had been minor complications with the modified shared parenting plan, but that generally, the arrangement had been satisfactory. Both parties, and the court, agreed that Lauryn, who had been in kindergarten, exhibited confusion during the school year as to whether she should ride the bus or wait for Brent to pick her up at school. Brent believed the "week-on/week-off" schedule would alleviate Lauryn's confusion, while Deborah believed Lauryn's confusion would be *Page 9 
eliminated by allowing Lauryn to ride the bus to her house where Brent could pick her up in the driveway.
 {¶ 9} The court indicated that it had conducted an in-camera interview with both children. Lauryn expressed her love for both parents but was unable to comprehend the nature of the proceedings and was hence unable to express her wishes as to parenting times. Jordan, who was 15 at the time of the hearing, stated that he was satisfied with the shared parenting plan and had good relationships with both parents. Similar statements were found in the report of the family service coordinator, who recommended slight modifications to the existing shared parenting plan.
 {¶ 10} When the court took the matter under advisement, it was faced with similar testimony and concerns from two competent and loving parents, both of whom wanted the best resolution for the children. In considering R.C. 3109.04(F)(1)(b)-(j), the evidence is not one-sided, as both parties exhibited multiple positive aspects as well as a few negative aspects. The problematic factor was R.C. 3109.04(F)(1)(a), which requires the court to consider the parents' wishes. The trial court had multiple written and oral proposals for the modification of the shared parenting plan. The trial court determined that Brent's proposed schedule for weekly parenting time would be in the children's best interests, and while the resolution was not the same resolution advocated by *Page 10 
Deborah, Jordan, or the family services coordinator, there is some competent and credible evidence in the record to support the court's determination.
 {¶ 11} Both parties and the trial court primarily sought to ease Lauryn's confusion as to her after-school transportation. Brent testified that the parents were called by the school two or three times over the winter of 2008 when Lauryn had a substitute teacher. Deborah testified that Lauryn needed daily reminders about whether she would ride the bus or not. The trial court apparently believed that spending a solid week with each parent would help to ease Lauryn's confusion and apparently believed that a daily reminder would be a minimal inconvenience to the parents. On this record, we cannot hold that the trial court abused its discretion. The sole assignment of error is overruled.
 {¶ 12} The judgment of the Marion County Common Pleas Court Family Division is affirmed.
Judgment Affirmed
 PRESTON, P.J., and SHAW, J., concur.
[1] A third child, who has since been emancipated and now lives with Brent, was also originally subject to the shared parenting plan.
[2] Although it is not at issue on appeal, the court also modified the holiday schedule. *Page 1