[Cite as *Kovach v. Lewis*, 2012-Ohio-1512.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| NORMAN A. KOVACH | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney , P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 11-COA-018 |
| WENDY L. LEWIS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Ashland County Court of
Common Pleas, Juvenile Division, Case
No. 20840160


JUDGMENT:                   AFFIRMED


DATE OF JUDGMENT ENTRY:     March 29, 2012


APPEARANCES:

For Appellant:                          For Appellee:

BRENT L. ENGLISH                        DEBORAH E. WOODWARD
M.K. Ferguson Plaza, Suite 470          1130 E. Main St., #187
1500 W. 3rd St.                         Ashland, OH 44805
Cleveland, OH 44113-1422

*Delaney, P.J.*

{¶1} Defendant-Appellant Wendy L. Lewis ("Mother") appeals the May 19, 2011 judgment entry of the Ashland County Court of Common Pleas, Juvenile Division. Plaintiff-Appellee is Norman A. Kovach ("Father").

**FACTS AND PROCEDURAL HISTORY**

{¶2} Mother and Father were in a romantic relationship and one child was born of the relationship on January 9, 2008. Mother alleged that before she became pregnant and after the birth of their child, Father orally agreed to pay one-half of the uninsured birth expenses. The parties' relationship ended in June 2008.

{¶3} On September 12, 2008, Father filed a Complaint to Establish Parental Rights with a Plan for Shared Parenting requesting the trial court to enter a Shared Parenting order. By judgment on December 8, 2008, the parties agreed Father was the father of the child. The trial court set the matter for further proceedings to determine the allocation of parental rights and responsibilities.

{¶4} A hearing was held on March 2, 2009 on Father's Complaint for Parental Rights. At the time of the hearing, both parents were employed. Father was a STNA at Keystone Pointe and worked 37 ½ hours per week, earning $9.75 per hour. Mother was a registered nurse and worked in disease management. She earned approximately $60,000 per year.

{¶5} The trial court issued its judgment on May 14, 2009. The trial court found it was in the best interests of the child that the court order shared parenting. Mother and Father were named the residential parents and legal custodians of the child. The trial court modified Father's proposed Shared Parenting Plan for the best

interests of the child. As to the Parenting Schedule, the trial court ordered the child would be with Father on a two-week schedule. On week one, the child would be with Father from Wednesday at 6:00 p.m. to Sunday at 6:00 p.m. On week two, the child would be with Father from Wednesday at 6:00 p.m. to Friday at 1:00 p.m. Mother would have the child on a two-week schedule on the days not designated as the days the child would be with Father.

{¶6} The trial court ordered Father to pay $23.23 per week in child support.

{¶7} On July 23, 2009, Mother filed a pro se letter with the trial court requesting modification of the May 14, 2009 judgment entry as to the Parenting Schedule, Father's home environment, and child support. In her request for modification of the Parenting Schedule, Mother stated Father had obtained new employment on July 7, 2009. Father worked as a corrections officer with the North Central Community Institution located in Marion, Ohio. His work hours were from 10:00 p.m. to 6:00 a.m., with Wednesdays and Thursdays off.

{¶8} Based on the May 14, 2009 judgment entry, the trial court issued a Shared Parenting Decree and Plan on July 31, 2009. The Parenting Schedule and child support stated above were included in the Decree and Plan. Mother did not appeal the July 31, 2009 judgment.

{¶9} Mother submitted another pro se letter to the trial court on August 10, 2009 requesting modification of the Parenting Schedule.

{¶10} On January 15, 2010, Mother, through counsel, filed a Motion for Order requiring Father to pay half of the uninsured birth expenses and a Motion to Modify

Child Support. Mother also filed a Motion to Modify Shared Parenting Decree/Plan and Motion to Terminate Shared Parenting Plan.

{¶11} While Mother's motions were pending before the trial court, on February 10, 2010, Mother was charged with one count of child endangerment, a first-degree misdemeanor. Mother was charged after Mother left the two-year old child in her car while she was in the Ashland Wal-Mart for 29 minutes and 42 seconds. *State of Ohio v. Wendy Lewis*, 192 Ohio App.3d 153, 2011-Ohio-187 (5th Dist.), ¶ 6. A passerby notified the police when she observed the child alone in the vehicle crying loudly. *Id*. at ¶ 2. A jury found Mother guilty as charged. *Id*. at ¶ 11. Mother appealed the decision to this court and we affirmed. *Id*.

{¶12} Father filed a Motion to Modify Allocation of Parental Rights and Responsibilities on March 5, 2010. Father asked that he be designated the sole residential parent.

{¶13} The trial court held a hearing on the motions on July 12, 2010. At the hearing, Mother requested the trial court not terminate the Shared Parenting Plan, but modify the Plan to take into consideration the parties' work schedules to determine the Parenting Schedule.

{¶14} The following evidence was adduced at the hearing. On January 21, 2010, Mother was laid off from her job and was now receiving unemployment in the amount of $1,700 per month. Mother received additional income from boarding and showing horses. Mother owns her home and the child has his own bedroom at the home.

{¶15} Father still worked as a corrections officer, earning $16.35 per hour. He left for work at 8:00 p.m. and arrived home from work at 7:30 a.m. with Wednesdays and Thursdays off. Father lives in his three bedroom home with his mother, brother, niece, and thirteen dogs. The brother and niece reside in the basement with their three dogs. Father has his own bedroom, his ten small dogs use the second bedroom, and the child sleeps in the third bedroom with his grandmother. While Father is working or sleeping, the grandmother cares for the child. The grandmother acknowledged there was mold in the bathroom that she sprayed with bleach.

{¶16} Mother testified her uninsured birth expenses were $5,402.08, which she has paid in full. Mother stated she and Father agreed to share in the birth expenses and Father has not paid his share.

{¶17} The trial court issued its decision on May 19, 2011. The trial court denied the motions to terminate the Shared Parenting Decree and Plan. Instead, the trial court modified the Plan incorporated into the Decree to have Father with the child from Tuesday at 6:00 p.m. to Friday at 6:00 p.m. on week two of his scheduled weeks. The trial court then calculated child support as $80.70 using the Child Support Computation Worksheet. The trial court deviated from the worksheet to set child support obligations of the parents at zero because the parents were with the child for an equal amount of time.

{¶18} The trial court also denied Mother's motion for birth expenses. The trial court found the evidence presented by Mother did not establish there was an agreement between the parties for Father to pay one-half the expenses. The trial

court also found Mother waived her claim by failing to raise it earlier in the proceedings and/or the claim was barred by the doctrine of laches.

{¶19} It is from this decision Mother now appeals.

**ASSIGNMENTS OF ERROR**

{¶20} Mother raises three Assignments of Error:

{¶21} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO CONSIDER APPELLANT'S REQUEST TO MAXIMIZE THE PARTIES' SON'S CONTACT WITH EACH OF HIS PARENTS BY ACCOUNTING FOR THEIR RESPECTIVE WORK SCHEDULES.

{¶22} "II. THE TRIAL COURT ABUSED ITS DISCRETION AND APPLIED THE WRONG STATUTE TO COMPUTE CHILD SUPPORT IN THIS CASE.

{¶23} "III. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S CLAIM FOR ONE-HALF OF THE UNINSURED BIRTH EXPENSES SHE INCURRED FOR THEIR SON HAD BEEN WAIVED OR WAS BARRED BY THE DOCTRINE OF LACHES."

**ANALYSIS**

***I.***

{¶24} Mother argues in her first Assignment of Error the trial court erred when it modified the Shared Parenting Decree and Plan without taking into consideration the parties' working schedules. She specifically argues the modification made by the trial court was not in the child's best interests because Father works nights. We disagree that the trial court erred.

{¶25} The Parenting Schedule is established in the parties' Shared Parenting Plan. The Shared Parenting Plan was incorporated into a Shared Parenting Decree on July 31, 2009. R.C. 3109.04(E) governs modification of a Shared Parenting Decree and/or a Shared Parenting Plan. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 11. R.C. 3109.04(E)(1)(a) requires a court to find a change in circumstances of the child, residential parent, or either parent subject to a Shared Parenting Decree before modifying a decree allocating parental rights and responsibilities. R.C. 3109.04(B)(2)(b) permits the court to modify the terms of a Shared Parenting Plan upon its own motion if the court finds the modifications are in the best interest of the child. *Fisher* at ¶ 5.

{¶26} In this case, the trial court did not modify the designation of the residential parent. The trial court modified the allocation of parenting time. "The allocation of parenting time is a 'term' of a shared parenting plan[.]" *Bishop v. Bishop*, 4th Dist. No. 08CA44, 2009-Ohio-4537, ¶ 35 citing *Herdman v. Herdman*, 3rd Dist. No. 9-08-32, 2009-Ohio-303, ¶ 6. Pursuant to R.C. 3109.04(E)(2)(b), the court may modify the terms of the Shared Parenting Plan if the modifications are in the best interest of the child.

{¶27} R.C. 3109.04(F) sets forth the factors a trial court must consider in determining the best interest of the child:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as

to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶28} In its May 19, 2011 Opinion and Judgment Entry, the trial court found because the Shared Parenting Plan was incorporated into the Shared Parenting Decree, it must also analyze the modification to the allocation of parenting time under R.C. 3109.04(E)(1)(a). R.C. 3109.04(E)(1)(a) requires the trial court find a change of circumstances before it can modify the allocation of parental rights and responsibilities.

{¶29} A trial court enjoys broad discretion in custody proceedings. *Cossin v. Holley*, 5th Dist. No. 2006 CA 0014, 2007-Ohio-5258, ¶ 28 citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraph one of the syllabus. It has been held the appellate court reviews the merits of a trial court's modification of the terms of the Shared Parenting Plan through R.C. 3109.04(E)(2)(b) under an abuse of discretion standard. *Bishop*, at ¶ 36 citing *Picciano v. Lowers*, 4th Dist. No. 08CA38, 2009-Ohio-3780, ¶ 25. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶30} In modifying the Parenting Schedule to give Father an additional day with the child, the trial court made the following findings. The trial court found there had been a change of circumstances since the July 31, 2009 Shared Parenting Decree in that Mother had been charged with child endangerment in regard to this child. As to best interests, the trial court found there was no change of environment for the child because the child spent approximately half time with each parent.

{¶31} Mother argues the trial court failed to consider her wishes regarding the child's care. Mother argues it was not in the child's best interest to be placed in the care of the child's grandmother while Father was working or sleeping. A review of the trial court's judgment shows the trial court considered Mother's argument and the other best interest factors in determining whether to modify the Shared Parenting Plan and Decree. The trial court acknowledged Mother's request that the Parenting Schedule be modified to fit the respective work schedules of the Father and Mother. (May 19, 2011 Opinion and Judgment Entry.) The trial court also reviewed the living environments of the parents, the relationship between the child and his parents, and the cooperation between the parents before Mother's conviction for child endangerment. The trial court further found there would be no adjustment for the child based on the modification to the Parenting Schedule because the child already spent approximately equal time with each parent.

{¶32} Upon review, we find no abuse of discretion in the trial court's determination there was a change in circumstances and it was in the best interests of the child to modify the Shared Parenting Plan and Decree as to the Parenting Schedule.

{¶33} Mother's first Assignment of Error is overruled.

*II.*

{¶34} Mother argues in her second Assignment of Error the trial court abused its discretion and applied the incorrect statute in computing child support. We disagree.

{¶35} The original Shared Parenting Decree ordered Father to pay child support in the amount of $23.23 per week. The trial court did not order Mother to pay child support. In the May 19, 2011 Opinion and Judgment Entry, the trial court computed child support according to the Child Support Computation Worksheet which stated child support in the amount of $80.70 per week. In the judgment, the trial court cited R.C. 3119.22 as guidance for when to apply a deviation in the amount of child support. The trial court found a deviation in the amount of child support to be paid was warranted under the factors listed in R.C. 3119.23 and concluded neither parent would pay child support. Specifically, the trial court found that based on the modification to the Parenting Schedule, the child would be with the parties an equal amount of time, and that each party would be responsible for the support of the child during the time the child was with each party.

{¶36} A trial court has broad discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. *Pauly v. Pauly,* 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997).

{¶37} The amount of child support calculated using the child support guidelines and worksheet is rebuttably presumed to be the correct amount of child support, although the trial court may deviate from that amount. R.C. 3119.03. R.C. 3119.24(A) applies in the case of shared parenting. *Pauly, supra.* Under R.C. 3119.24, the trial court may deviate from the amount of child support in the worksheet if it determines the guideline amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary

circumstances of the parents or because of any other factors or criteria listed in R.C. 3119.23.

{¶38} Mother argues the trial court erred by utilizing R.C. 3119.22 to determine whether to grant a deviation.  R.C. 3119.22 states: "The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child."

{¶39} We find any error by the trial court with the application of R.C. 3119.22 or R.C. 3119.24 to determine a deviation to be harmless in this case.  As indicated above, R.C. 3119.24 provides the trial court may deviate from the guideline amount if such would be unjust or inappropriate and would not be in the best interest of the child or either parent because of (1) extraordinary circumstances of the parents *or* (2) any other factors or criteria set forth in R.C. 3119.23.  *Ramey v. Ramey*, 5th Dist. No. 08-CA-38, 2009-Ohio-2909, ¶ 38.   R.C. 3119.24 utilizes the same standard as R.C. 3119.22 to find that a deviation is permissible if such would be unjust or inappropriate and would not be in the best interest of the child.  R.C. 3119.24 then requires the trial court to either (1) find extraordinary circumstances of the parents *or* (2) apply the factors in R.C. 3119.23 to determine whether it would be unjust or inappropriate and

would not be in the best interest of the child. The trial court in this case considered the factors in R.C. 3119.23. Because the trial court considered the factors in R.C. 3119.23, we find no error in the trial court's application of R.C. 3119.22 to determine deviation in the child support amount established in a Shared Parenting Plan.

{¶40} R.C. 3119.24(B)(1) through (4) defines "extraordinary circumstances of the parents," and includes: (1) the amount of time the children spend with each parent; (2) the ability of each parent to maintain adequate housing for the children; (3) each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant; and (4) any other circumstances the court considers relevant.

{¶41} R.C. 3119.24 provides the trial court may use the factors set out in R.C. 3119.23 in determining the amount of the deviation. R.C. 3119.23 provides a list of the statutory criteria a court may consider when determining whether to deviate from the child support schedule, including: (A) special and unusual needs of the children; (B) extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination; (C) other court-ordered payments; (D) extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order; (E) the obligor

obtaining additional employment after a child support order is issued in order to support a second family; (F) the financial resources and the earning ability of the child; (G) disparity in income between parties or households; (H) benefits that either parent receives from remarriage or sharing living expenses with another person; (I) the amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents; (J) significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing; (K) the relative financial resources, other assets and resources, and needs of each parent; (L) the standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married; (M) the physical and emotional condition and needs of the child; (N) the need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen; (O) the responsibility of each parent for the support of others; and (P) any other relevant factor.

{¶42} Under the Worksheet, the trial court calculated Father's child support obligation to be $4,196 per year. Mother's child support obligation was $2,956 per year. Mother argues the trial court erred in failing to consider Mother's local income taxes and giving Father credit for health insurance for the child and payment of child support to another child. Regardless of the trial court's calculations, the result in this case is that the trial court deviated from the Worksheet calculations considering the factors listed in R.C. 3119.23 to establish both parent's child support obligations were zero. The basis for the trial court's decision was that the child was with the parents an

equal amount of time and each parent was responsible for the support of the child while the child was in their care. We find the trial court's deviation from the Worksheet to be supported by the record and the factors listed in R.C. 3119.23.

{¶43} Accordingly, we find the trial court did not abuse its discretion in calculating the amount of child support.

{¶44} Mother's second Assignment of Error is overruled.

*III.*

{¶45} Mother argues in her final Assignment of Error the trial court erred in denying her motion for Father to pay one-half of the birth expenses.

{¶46} Father filed a Complaint to Establish Parental Rights on September 12, 2008. R.C. 3113.31 applies to the inclusion of birth expenses into the judgment determining the existence of the parent and child relationship:

(A) The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes.

* * *

(C) Except as otherwise provided in this section, the judgment or order may contain, at the request of a party and if not prohibited under federal law, any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the payment of all or any part of the reasonable expenses of the mother's pregnancy and confinement, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. * * *

{¶47} At the time of the Complaint and the judgment establishing Father as the parent on December 8, 2008, Mother did not raise the issue of her birth expenses before the trial court.

{¶48} Mother filed her motion for birth expenses on January 15, 2010. Her motion is silent as to R.C. 3113.31. At the hearing on July 12, 2010, Mother testified she had $5,402.08 in uninsured medical expenses related to the child's birth. She testified she had an oral agreement with Father to pay those expenses. There is no testimony from Father in the record, on direct or cross examination, as to the alleged oral agreement.

{¶49} In the May 19, 2011 Opinion and Judgment Entry, the trial court found the evidence failed to establish there was an oral agreement to pay the birth expenses. There was no evidence Mother sought reimbursement from Father prior to filing the motion. The trial court also determined Mother waived her claim and/or the claim was barred by the doctrine of laches.

{¶50} The Ohio Supreme Court described the doctrine of waiver as follows:

A waiver is a voluntary relinquishment of a known right. *State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Directors*, 75 Ohio St.3d 611, 616, 665 N.E.2d 202, 207 (1996). It applies generally to all personal rights and privileges. *Id.,* citing *Sanitary Commercial Serv., Inc. v. Shank*, 57 Ohio St.3d 178, 180, 566 N.E.2d 1215, 1218 (1991). Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right. A waiver may be enforced by the person who had a duty to

perform and who changed his or her position as a result of the waiver.

*Andrews v. State Teachers Retirement Sys. Bd.* (1980), 62 Ohio St.2d

202, 205, 16 O.O.3d 240, 242, 404 N.E.2d 747, 749."

*Chubb v. Ohio Bur. Of Workers' Comp.*, 81 Ohio St.3d 275, 690 N.E.2d 1267 (1998).

{¶51} Laches has been defined by the Ohio Supreme Court as "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984) quoting *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959). Delay in asserting a right does not of itself constitute laches. *Zartman v. Swad,* 5th Dist. No. 02CA86, 2003–Ohio–4140, ¶ 51, citing *Connin, supra*, at 35–36, 472 N.E.2d 328. The decision of a trial court concerning the application of the equitable doctrine of laches will not be reversed on appeal in the absence of an abuse of discretion. *Payne v. Cartee*, 111 Ohio App.3d 580, 590, 676 N.E.2d 946 (4th Dist.1996).

{¶52} Issues of waiver and laches are "fact-driven." *Riley v. Riley,* 5th Dist. No. 2005-CA-27, 2006-Ohio-3572, ¶ 27, citing *Dodley v. Jackson,* 10th Dist. No. 05AP11, 2005-Ohio-5490.

{¶53} In order for there to be a breach of an oral agreement, the party must first establish the existence of an agreement. The trial court found there was no evidence, other than Mother's testimony, of an oral agreement between Mother and Father for payment of the uninsured birth expenses. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio

St.2d 279, 376 N.E.2d 578 (1978).  As found by the trial court, there was no evidence other than Mother's testimony of the existence of an agreement.  The trial court is in the best position to determine the credibility of the witnesses.

{¶54} Finally, considering the doctrine of waiver and laches under R.C. 3113.13, we find the trial court did not abuse its discretion in finding Mother had waived her argument for birth expenses and was prevented from bringing her claim for birth expenses in these proceedings by the doctrine of laches.  R.C. 3113.13 permits the inclusion of the birth expenses in the December 8, 2008 judgment entry or the May 14, 2009 judgment entry.

{¶55} We find the trial court's decision was supported by the evidence and was not an abuse of discretion.

{¶56} Mother's third Assignment of Error is overruled.

## CONCLUSION

{¶57} The judgment of the Ashland County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, P.J.

Gwin, J. and

Hoffman, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


PAD:kgb

[Cite as *Kovach v. Lewis*, 2012-Ohio-1512.]

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| NORMAN A. KOVACH | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| WENDY L. LEWIS | : | |
| | : | |
| | : | Case No. 11-COA-018 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Ashland County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to Appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN