[Cite as *Hatfield v. Hatfield*, 2022-Ohio-737.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JENNIFER HATFIELD, | : | APPEAL NO. C-210295 |
| | | TRIAL NO. DR1901615 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| NATHAN HATFIELD, | : | |
| Defendant-Appellant. | : | |

Appeal From:   Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 11, 2022

*Ryan L. Debra,* for Plaintiff-Appellee,

*Cornetet, Meyer, Rush & Stapleton* and *Karen P. Meyer,* for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1}    Defendant-appellant Nathan Hatfield ("father") appeals the judgment of the Hamilton County Court of Common Pleas, Domestic Relations Division, raising two assignments of error for our review concerning the trial court's allocation of parenting time. For the reasons that follow, we overrule both assignments of error and affirm the judgment of the domestic relations court.

### *Factual and Procedural Background*

{¶2}    Father and plaintiff-appellee Jennifer Hatfield ("mother") were married in October 2013 and have two children together: D.H. and L.H. D.H. was born in September 2015. D.H. is on the autism spectrum and struggles with transitions and schedule changes. L.H. was born in April 2019. L.H. was born prematurely, spent several months in the neonatal intensive care unit prior to being discharged from the hospital, and requires ongoing therapy to address developmental delays. Father left the family home on or about July 31, 2019, shortly after L.H. came home from the hospital.

{¶3}    Mother filed for divorce on August 29, 2019. The parties reached a negotiated settlement on property issues and agreed to shared parenting, but did not agree on the allocation of parenting time. Each party submitted a shared-parenting plan to the court. Father's plan sought equal parenting time with overnights, while mother's plan included less overnights for father. Gina Iames, the parenting investigator, recommended a different schedule as well after completing a brief investigation focused solely on parenting time. Her schedule alternated between two weeknight overnights for father on week one, followed by one weeknight overnight and a full weekend on week two. Iames testified that she formulated this schedule

2

"basically from what the parents told me they wanted for parenting time." After considering these plans and the testimony of the parties, the domestic relations court found the following parenting schedule to be in the best interest of the children:

> Father shall have parenting time each Tuesday and Thursday beginning at 4:00pm and ending at 7:30pm. In addition, Father shall have parenting time every other weekend beginning at [sic] Friday at 4:00pm until Sunday at 6:00pm.

Pursuant to R.C. 3109.04(D), the court stated in its March 18, 2021 entry on parenting time that, "Mother shall prepare a shared parenting plan incorporating the agreements of the parties and this entry and submit said plan to the Court by April 1, 2021 at 12:00pm." Then, on April 9, 2021, the court entered the decree of shared parenting with time allocated as set forth in the shared-parenting plan.

{¶4} In two assignments of error, father contests this schedule and contends that he should have been given more parenting time.

### First Assignment of Error

{¶5} In his first assignment of error, father argues the domestic relations court abused its discretion by allocating parenting time "in violation of the parties' agreement and wishes" by rejecting the schedule proposed by the parenting investigator and "arbitrarily choos[ing] an entirely different schedule which gives the children substantially less time to be parented by their Father."

{¶6} We review the domestic relations court's decision on issues related to parental rights and responsibilities for an abuse of discretion. *In re K.S.*, 1st Dist. Hamilton No. C-190754, 2020-Ohio-6863, ¶ 7, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988), and *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843,

3

2011-Ohio-463, ¶ 41; *see Hoskins v. Hoskins*, 1st Dist. Hamilton Nos. C-120130 and C-120213, 2013-Ohio-1126, ¶ 11 ("[t]he trial court has broad discretion when setting a parenting schedule"). This court has stated that:

> [t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.

*In re K.S.* at ¶ 7, quoting *Miller* at 74. Only in cases where the "court's decision regarding the child's best interests is not supported by competent, credible evidence" should we find an abuse of discretion. *In re K.S.* at ¶ 7, quoting *In re D.M.,* 1st Dist. Hamilton No. C-140648, 2015-Ohio-3853, ¶ 11.

{¶7} Once a domestic relations court determines shared parenting is appropriate, it must also determine an appropriate plan for shared parenting. "The allocation of parenting time is a 'term' of a shared parenting plan," and must be in the children's best interest. *Bishop v. Bishop*, 4th Dist. Washington No. 08CA44, 2009-Ohio-4537, ¶ 35, quoting *Herdman v. Herdman*, 3d Dist. Marion No. 9-08-32, 2009-Ohio-303, ¶ 6. *See* R.C. 3109.04(D)(1)(a). When both parties submit shared-parenting plans, as is the case here, the court will review the plans to determine which of the plans, if any, are in the best interest of the children. R.C. 3109.04(D)(1)(a)(ii). If neither plan is in the children's best interest, the court can order changes to the plans submitted by the parents. *Id.* Once the revised plan is submitted, the court may approve it if is in the best interest of the children. *Id.*

4

{¶8} In determining the best interest of the children, the court should consider the following factors:

(a) The wishes of the child's parents regarding the child's care;

(b) * * * the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation[.]

R.C. 3109.04(F)(1)(a) – (e).

{¶9} After considering testimony from the parties, and reviewing the submitted plans, the court issued its own schedule, and provided its reasoning for setting the schedule in its entry on parenting time. The court stated that "the children will develop the best relationship possible with both parents if their schedules and routines are solidified with minimal transitions." The court went on to state that "[d]espite Mother's willingness to compromise and allow Father school overnights, it is clearly in the children's best interest to have a consistent weekly schedule." The court found that "Mother's home is better suited for" "calm and predictable" overnights. In support of that finding, the court noted that "[t]he children are more familiar with the marital home," and that "Mother's home is closer to school, and closer to their maternal family." The court also found that "[t]here is

no indication that equal parenting time would be in the best interest of the children." In support of this finding, the court noted that "Father's testimony focused far more on [D.H.] than it did on [L.H.]" The court stated that father's bond with L.H. seemed "strained by Father's diminished presence in [L.H.'s] life." The court also noted its belief "that Father had a stronger interest in reducing his child support obligation than an interest in quality time and care-taking of the children." The court stated, "For example," father seemed to believe that when the children were sleeping, it is not " 'actual parenting time,' " which "contradicts the reality of caring for small children in the middle of the night."

{¶10} Father argues that the court's allocation of parenting time is arbitrary and unsupported by any facts establishing that it is in the best interest of the children. Father specifically objects to three of the court's findings relied upon in reaching its decision.

{¶11} First, father claims that if the court aimed to set a schedule that minimized transitions, then "clearly the parenting investigator's recommendations are superior." While the schedule set by the court may have increased the amount of transitions, the court noted in its entry that it also allows the children to have the desired "consistent weekly schedule," in which they can sleep in the same bed each weeknight. Mother testified that she felt it was important for D.H. to "sleep in the same bed every night and be able to * * * get to school on time and not get anxiety with getting ready for school in the morning." Mother also testified that D.H. would sometimes have "sudden outbursts," if there is a change to a routine. Father recognized D.H.'s "need for consistency," but said that "[i]f you take the time to explain to him what is happening and if I ask, he usually, his answer is [literally], oh,

okay." It is clear that minimizing transitions was not the only consideration of the court in constructing its parenting schedule. Rather, the court found that it was in the children's best interest to have a "consistent weekly schedule" with "calm and predictable" overnights.

{¶12} Second, father argues "[n]o facts were submitted to support[] [the] statement" that "[t]he children are more familiar with the marital home." Mother testified that D.H. calls the marital home, "home," and calls father's apartment, "daddy's place." Mother also testified that D.H.'s school is "literally one minute from the [marital home]," and that father's home was approximately 30 minutes away. Mother further testified that the children's maternal grandmother's ("grandmother") lives four or five minutes from the marital home and watches them weekly. Mother testified that grandmother "has watched [the children] since they were born," and has a close relationship with them. Mother claimed that grandmother or other nearby family members would be there "in a pinch" "if something were to happen." Mother stated that she was unsure who father would be able to call in a similar situation.

{¶13} Father contends that the children are familiar with both residences because they have been parented at both since the separation. He notes that L.H. "had been parented by both of her parents at separate residences all her life save the first four months." Father testified that he has a crib and a twin bed for the children at his apartment; and that the children enjoy taking walks in his neighborhood and watching movies together when they are with him.

{¶14} Based on the testimony presented, it was reasonable for the court to find that the children were more familiar in the home where they have spent the

7

majority of their childhood, and where they are in close proximity to their school and their relatives. While the testimony does not indicate that the children are by any means "unfamiliar" with father's home, the court's finding that the children were more familiar in the marital home was based on competent and credible evidence and was not abuse of discretion.

{¶15} Third, father argues that the court's finding that his bond with L.H. was strained was not supported by the facts. On this point, much of the testimony concerned mother's and father's respective attendance at L.H.'s therapy sessions. Mother testified that she attended every therapy session. However, father admitted that his attendance was not consistent.

{¶16} Testimony also demonstrated that father left the marital home within days of L.H. arriving home from the hospital—and he has been out of the marital home ever since. The court asked father about his relationship with L.H., stating, "I have to tell you I haven't heard—you didn't give any testimony about your interaction with your daughter. Have you bonded with her?" Father acknowledged that his testimony had focused more on D.H., and stated that "I had a hard time initially, if I'm being candid, bonding with [L.H.] in those first months that she was home just due to the limited interaction that I had with her." Father went on to testify about L.H.'s development stating that "as she has kind of grown and developed, she loves to sing, likes to sing and dance, and watch Baby Shark." The court's finding that father's bond with L.H. was strained was supported by the testimony.

{¶17} After reviewing the record, we find the court's parenting schedule was based on competent and credible evidence and was not an abuse of discretion.

### Second Assignment of Error

{¶18} Father's second assignment of error states that "the trial court erred in dismissing the recommendations of the parenting counselor to which both parties had agreed in favor of a schedule which was not agreed upon by the parties or recommended by the parenting counselor."

{¶19} First, the record does not show that the parties agreed to the proposed schedule of the parenting investigator. Although the record shows that mother was willing to compromise, it is clear that the parties had not yet agreed on parenting time. In the March 17, 2021 hearing on parenting time, the court began the hearing by stating, "the reality is mom and dad are both agreeing to Mother's Shared Parenting Plan *with the Court deciding child support and parenting time*. So in the Court's decision, * * * when I come up with child support and [a] parenting time schedule that is sent to you, * * * I guess you can insert that in Mother's Shared Parenting Plan and then get the parties to sign it, and that would be complete. So can I—can we put that on the record, saying that's what we are doing?" After the parties agreed, the court reiterated, "[s]o we just need to do child support and parenting time. All right."[1]

{¶20} Second, a court may reject a parenting investigator's proposed schedule if the court does not believe the schedule is in the best interest of the children. *Hoskins v. Hoskins*, 1st Dist. Hamilton Nos. C-120130 and C-120213, 2013-Ohio-1126, ¶ 10-11. Because the domestic relations court must consider the best

---

[1] In its entry on parenting time, the court stated, "The parties have agreed to shared parenting. The only remaining issues for the Court to determine is the shared parenting time schedule and the corresponding determination of child support."

interest of the children above all else, it was not an abuse of discretion to reject the parenting investigator's schedule and to issue its own schedule.

**{¶21}** For the foregoing reasons, we overrule father's first and second assignments of error and affirm the judgment of the domestic relations court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion