**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, Slip Opinion No. 2020-Ohio-3197.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3197

THE STATE EX REL. MUNICIPAL CONSTRUCTION EQUIPMENT OPERATORS' LABOR COUNCIL, APPELLANT, *v.* THE CITY OF CLEVELAND ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, Slip Opinion No. 2020-Ohio-3197.]**

*Public records—R.C. 149.43—Mandamus—Statutory damages and attorney fees— Court of appeals' judgment denying writ of mandamus and requests for statutory damages and attorney fees affirmed.*

(No. 2019-0760—Submitted January 28, 2020—Decided June 9, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 10785, 2019-Ohio-1889.

_____

**Per Curiam.**

{¶ 1} Appellant, the Municipal Construction Equipment Operators' Labor Council (the "union"), appeals the decision of the Eighth District Court of Appeals

denying as moot the union's complaint for a writ of mandamus to compel respondents, the city of Cleveland and its Civil Service Commission (collectively, "Cleveland" or "the city"), to release public records relating to a job posting. For the reasons explained below, we affirm the judgment of the court of appeals.

**Background**

{¶ 2} On August 1, 2018, the union's attorney e-mailed a public-records request to Cleveland seeking "an emailed copy of the application files of and test reports for" a list of people who had applied for an open position with the city. The following day, Cleveland acknowledged receipt of the union's request. On August 23, 2018, the union filed a complaint for a writ of mandamus to compel Cleveland to produce the requested records. The Eighth District referred the case to mediation, and a few months later, it directed the parties to certify to the court which records had been released and when and how they had been released.

{¶ 3} In its December 2018 certification, the union acknowledged that Cleveland had produced some responsive records through a September 2018 e-mail. But for several reasons, the union maintained that Cleveland had not yet fully satisfied the union's records request. Relevant to this appeal, the union asserted that Cleveland had not released any records regarding its evaluation of the applicants' work experience. With its certification, the union also filed copies of the records that Cleveland had produced.

{¶ 4} Cleveland, which filed its certification a day after the union, certified that it had fulfilled the union's request and submitted copies of all the records that it had released to the union. According to Cleveland, on August 20—three days before the union filed its mandamus complaint—Cleveland sent to the union's attorney an e-mail with a hyperlink to the responsive records. Cleveland claimed that it re-sent that link in separate e-mails on September 6 and September 13, and that on September 18, it sent another e-mail to the union's attorney with a link to an additional document. Cleveland also accused the union of making material

2

misrepresentations in its certification, including failing to file all the records that Cleveland had released in response to the union's public-records request and failing to acknowledge that Cleveland initially produced records on August 20.

{¶ 5} In February 2019, the Eighth District determined that the union's objections to the sufficiency of Cleveland's response were not well founded and ordered the union to show cause why the case should not be considered moot. In response, the union argued that because Cleveland had not yet produced records regarding its evaluation of the applicants' work experience, the union's case was not moot.

{¶ 6} In a May 2019 decision, the Eighth District determined that the union's argument was "unpersuasive," citing over 25 pages of records from Cleveland's certification relating to its evaluation and grading of the applicants' work experience. 2019-Ohio-1889, ¶ 7. The court therefore concluded that Cleveland had produced all records responsive to the union's request and denied the union's mandamus action as moot. The court further ordered each side to pay its own costs. *Id.* at ¶ 9. The union timely appealed, raising three propositions of law.

## Analysis

{¶ 7} "Mandamus is an appropriate remedy to compel compliance with Ohio's Public Records Act." *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 5. To be entitled to the writ, the relator must establish a clear legal right to the requested relief and a corresponding clear legal duty on the part of the respondent to provide that relief. *Id.* "In general, providing the requested records to the relator in a public-records mandamus case renders the mandamus claim moot." *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 14.

*Proposition of law No. I: The duties under R.C. 149.43(B) to "transmit" copies and provide those copies "in accordance with the choice made" by the requester*

{¶ 8} R.C. 149.43(B)(7)(a)[1] provides that when a request is made for a copy of a public record, the public office "shall transmit" the copy "by United States mail or by any other means of delivery or transmission within a reasonable period of time." When the union made its records request in this case, R.C. 149.43(B)(6) allowed the union to choose whether to have Cleveland duplicate the records on paper, on the same medium upon which Cleveland kept the records, or on any other medium on which Cleveland determined that the records could reasonably be duplicated. Cleveland was then obligated to provide the copy of the records in accordance with the choice made by the union.

{¶ 9} As noted above, the union's attorney sought "an emailed copy" of the city's records responsive to the request. In response, Cleveland sent to the union a series of e-mails with instructions similar to the following: "Please log in to the *Cleveland Public Records Center* at the following link to retrieve the appropriate responsive documents." (Underlining sic.) The e-mails further noted that after the union accessed the records, it had 30 days in which to view and download them.

{¶ 10} In its first proposition of law, the union asserts that Cleveland failed to comply with its duties to "transmit" copies of the requested records and to provide those copies in accordance with the union's chosen form of duplication. According to the union, the definition of "transmit" does not require the requester "to do anything to receive the produced record." Therefore, by sending a link to access the documents—which the union claims required it "to sign on to the

---

1. The union's public-records request was governed by former R.C. 149.43, 2016 Am.Sub.H.B. No. 471, which was in effect on the dates on which the union made its public-records request and filed its mandamus complaint in the Eighth District. *See State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 11, fn. 1. All references to R.C. 149.43 refer to that version of the statute.

4

municipality's computer to access, view and download the municipality's response"—the city failed to both "transmit" the records as required by R.C. 149.43(B)(7)(a) and to provide copies to the union in accordance with the choice made by the union—i.e., by e-mail—as required by R.C. 149.43(B)(6).

{¶ 11} The union, however, has not established that Cleveland violated either duty. First, with respect to Cleveland's duty under R.C. 149.43(B)(7)(a) to "transmit" copies, the fact that the union had to click on a link in the city's e-mails to view and download the responsive records does not mean that Cleveland failed to "transmit" those records. "Transmit" is not defined in R.C. 149.43, and when "a term is not defined in [a] statute, it should be accorded its plain and ordinary meaning." *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17. "Transmit" is commonly defined as "[t]o send or transfer (a thing) from one person or place to another" or "to communicate." *Black's Law Dictionary* 1728 (10th Ed.2014). Under the ordinary meaning of the word, Cleveland transmitted copies of the responsive records to the union by sending e-mails with hyperlinks that allowed the union to view and download copies of the records. As the Eighth District determined, there is little difference between clicking on a hyperlink in an e-mail and clicking on an attachment to an e-mail. 2019-Ohio-1889 at ¶ 5. In the end, both methods provide the requester with the responsive records. To hold otherwise would establish an overly technical and unnecessarily narrow meaning of "transmit" in the Public Records Act, R.C. 149.43(B)(7)(a).

{¶ 12} Second, with respect to Cleveland's duty under R.C. 149.43(B)(6) to provide copies in the form chosen by the union, the union failed to raise this statutory argument in the proceedings below. If the union believed that Cleveland's e-mails did not amount to "an emailed copy" of the requested records, the union should have raised that argument in the Eighth District so that the court could decide the issue in the first instance. Regardless, absent any evidence in the record

that the union attempted to clarify its choice of delivery method, we cannot conclude that Cleveland failed to transmit copies of the records "in accordance with the choice made by the person seeking the copy." *See* R.C. 149.43(B)(6). Again, the union requested an "emailed copy" of records and Cleveland responded by sending e-mails with hyperlinks to the responsive documents. The fact that the union had to click on a link to view those records does not mean that Cleveland failed to provide copies through e-mail as the union had requested.

{¶ 13} The union therefore has not established that Cleveland failed to comply with its duties under R.C. 149.43(B)(7)(a) or 149.43(B)(6).

*Proposition of law No. II: The duty under R.C. 149.43(B) to promptly release records*

{¶ 14} R.C. 149.43(B)(1) provides that public records "shall be promptly prepared and made available for inspection to any person at all reasonable times."

{¶ 15} In its second proposition of law, the union asserts that Cleveland failed to comply with R.C. 149.43(B)(1) because Cleveland produced a certain subset of records—documents relating to the city's evaluation of the applicants' work experience—128 days after the union submitted its request. According to the union, Cleveland first produced those records in its December 2018 certification to the Eighth District and the records were not released through Cleveland's September 2018 e-mails.

{¶ 16} Although the Public Records Act is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence." *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16. Here, the union has not established by clear and convincing evidence that Cleveland did not release the responsive applicant-evaluation records until 128 days after the union's request.

{¶ 17} As noted above, after the Eighth District referred this case to mediation, it directed each side to certify the status of the matter. With their December 2018 certifications, the union and Cleveland submitted copies of the records that Cleveland had purportedly released. The union's certification did *not* include the subset of records relating to Cleveland's evaluation of the applicants' work experience, but Cleveland's certification *did* include those records. Cleveland also alleged that the union's certification failed to include all the records that Cleveland had released, and Cleveland included affidavits from two city employees, one of whom averred that (1) in August 2018, Cleveland uploaded all records responsive to the union's request into Cleveland's public-records-management system, (2) in August and September, Cleveland sent to the union's attorney e-mails with links to those records, and (3) in September and October, the union's attorney accessed and viewed those records.

{¶ 18} After receiving Cleveland's certification, the union had at least two opportunities in the court of appeals to contradict Cleveland's evidence or assert that Cleveland's certification included more records than it had previously released. But in the union's reply to Cleveland's certification, the union did not argue that Cleveland had produced its applicant-evaluation records for the first time in its December 2018 certification. And in the union's response to the Eighth District's entry ordering the union to show cause why its mandamus action should not be considered moot, the union maintained that Cleveland had not yet released *any* records regarding its evaluation of the applicants' work experience.

{¶ 19} Instead, the union raises for the first time in this appeal the argument that Cleveland had not promptly provided the applicant-evaluation records. And to support its position, the union submitted with its merit brief an affidavit from its attorney, who avers that those records were not included with the other responsive

records in Cleveland's e-mails.[2]  It is well established, however, that " ' "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." ' " *State ex rel. Montgomery Cty. Pub. Defender v. Siroki*, 108 Ohio St.3d 207, 2006-Ohio-662, 842 N.E.2d 508, ¶ 20, quoting *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 654 N.E.2d 1254 (1995), quoting *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.  We therefore will not consider the affidavit from the union's attorney.

{¶ 20} Nor will we consider the union's new argument raised in its reply brief that even if we were to determine that Cleveland had released all the responsive records through its September 2018 e-mails, the city nonetheless violated R.C. 149.43(B)(1) by not fulfilling the union's August 1 public-records request until mid-September.  By making this argument for the first time in its reply brief, the union prevented Cleveland from responding to the argument.  For that reason, we generally do not consider issues raised for the first time in a reply brief. *See State ex rel. Sands v. Culotta*, 157 Ohio St.3d 387, 2019-Ohio-4129, 137 N.E.3d 74, ¶ 9.  And because Cleveland presented evidence to the Eighth District indicating that it first e-mailed a link to the responsive records on August 20, 2018—three days before the union filed its mandamus complaint—Cleveland likely would have disputed the union's timeline.

{¶ 21} Based on the record properly before this court, the union has not established that Cleveland failed to promptly release records in violation of R.C. 149.43(B)(1).

---

2. According to the union, its attorney did not discover the basis of this argument until he reviewed the Eighth District's decision, which identified the applicant-evaluation records in Cleveland's December 2018 certification.

*Proposition of law No. III: Damages and attorney fees*

{¶ 22} In its third proposition of law, the union asserts that it is entitled to statutory damages and attorney fees because (1) Cleveland failed to "transmit" any copies of records to the union in accordance with the union's chosen delivery method, (2) Cleveland did not transmit the subset of applicant-evaluation records directly to the union—rather, it released those records only to the court of appeals in its December 2018 certification, and (3) Cleveland failed to promptly release records.

{¶ 23} Under R.C. 149.43(C)(2), an award of statutory damages requires a court to determine that the public office or person responsible for the public records failed to comply with an obligation under R.C. 149.43(B). *Rogers*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, at ¶ 23. Similarly, "R.C. 149.43(C)(2)(b)(i) requires an award of reasonable attorney fees when the public office or person responsible for the public records failed to timely respond, pursuant to R.C. 149.43(B), to the public-records request." *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 24.

{¶ 24} As explained above, the union has not established that Cleveland failed to comply with any duty under R.C. 149.43(B). The Eighth District, therefore, correctly decided against awarding the union statutory damages or attorney fees.

**Conclusion**

{¶ 25} Because the union has not established that Cleveland failed to produce records responsive to its public-records request or violated any other duty under the Public Records Act, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 26} While I disagree with the majority's reasoning for its decision, I agree with its decision to affirm the judgment of the Eighth District Court of Appeals denying the complaint for a writ of mandamus filed by appellant, the Municipal Construction Equipment Operators' Labor Council (the "union"). I write separately to explain why I believe (1) the union waived its argument that respondents, the city of Cleveland and its Civil Service Commission (collectively, "Cleveland" or "the city") violated R.C. 149.43(B)(7)(a), (2) some of the majority's determinations are wrong, and (3) the majority's interpretation of the statutes at issue here impermissibly diminish the people's rights under the Public Records Act, R.C. 149.43. Because I disagree with the majority opinion's reasoning, I concur in judgment only.

{¶ 27} The majority rejects the arguments made by the union in its first proposition of law on two bases. First, the majority determines that the union failed to establish that Cleveland violated its duty to "transmit" copies of the requested public records under R.C. 149.43(B)(7)(a). Second, the majority determines that the union failed to raise in the court of appeals its argument that the city failed to provide copies of the requested records in the form chosen by the union under R.C. 149.43(B)(6).[3] While I disagree with the majority regarding both of those determinations, I nevertheless reach the same conclusion as the majority—that the union's first proposition of law has no merit—but I do so on the ground that the union waived its argument based on R.C. 149.43(B)(7)(a).

_____

3. The union's public-records request was governed by former R.C. 149.43, 2016 Am.Sub.H.B. No. 471. All references to R.C. 149.43 refer to that version of the statute, which was in effect on the dates on which the union made its public-records request and filed its mandamus complaint in the Eighth District.

### A. *The union waived its argument based on R.C. 149.43(B)(7)(a)*

{¶ 28} I agree with the majority's presentation of the facts in this case, but it leaves out other important facts in the record that bear upon the correct resolution of this case.

{¶ 29} In Cleveland's August 2, 2018 e-mail to the union's counsel notifying the union that Cleveland had received the union's public-records request, Cleveland provided the tracking-reference number C001239-080218 and stated that the public-records request "[was] being processed in accordance with the public records laws." The e-mail also stated: "You can monitor the progress of your request at the link below and you'll receive an email when your request has been completed."

{¶ 30} On August 13, 2018, the union sent an e-mail to Cleveland requesting a response to its public-records request "no later than August 14, 2018." The union told Cleveland, "It is noteworthy that Cleveland has previously provided substantive documents of this type within two weeks after the request was made."

{¶ 31} On August 20, 2018, Cleveland sent an e-mail notification to the union informing it that public records responsive to its request had been uploaded to the Cleveland Public Records Center. Cleveland again provided the tracking-reference number C001239-080218. The union received two more e-mails from Cleveland, on September 13 and 18, 2018, notifying the union that public records responsive to its request had been uploaded to the records center. Cleveland provided the tracking-reference number in both of those e-mails. Cleveland included boilerplate language in all the e-mail notifications it sent to the union. That boiler-plate language included access-limitation language regarding how many times and for how many days the union could view or download the responsive records. The boilerplate language provided, "Please note: Make sure that any pop-up blockers are turned off in order to view/download documents.

Documents may be viewed/downloaded up to 3 times. You have up to 30 days to view/download documents."

{¶ 32} Cleveland submitted to the court of appeals the affidavit of Alberto Guzman, the supervisor of hardware evaluations for Cleveland. Guzman averred that on September 6, 2018, the union "accessed and viewed" a series of records responsive to its public-records request. On that same date, the union's counsel sent an e-mail to Cleveland in which he stated, "None of the files can be downloaded. The messages I received are attached. Please get this fixed by noon tomorrow."

{¶ 33} Guzman averred that on September 7, 2018, he contacted the union's counsel by telephone "and helped him troubleshoot turning off the popup blocker on his internet browser so that he could download" the documents responsive to the union's public-records request. Guzman also stated that the union's counsel "accessed and viewed" a series of records responsive to the union's public-records request that same day. According to Guzman, on October 15, 2018, the union's counsel "accessed and viewed" the "score sheet" relating to the candidates who had applied for the open position with the city. And on October 17, 2018, the union's counsel "accessed and viewed" additional records responsive to the union's public-records request.

{¶ 34} On December 6, 2018, Cleveland filed in the court of appeals a certification of the records it had produced to the union stating that records responsive to the union's public-records request with the tracking-reference number C001239 had been uploaded to the Cleveland Public Records Center, that instructions on how to retrieve the responsive documents had been provided, and that the union had accessed and viewed those records.

{¶ 35} In response to Cleveland's certification, the union filed a reply arguing that Cleveland's merely providing "access" was inconsistent with Cleveland's duties under R.C. 149.43(B)(7). According to the union, "[t]hat statute

12

requires transmittal of the requested public record to its requestor." The union cited language in R.C. 149.43(B)(7)(a) and argued that "[n]o provision of this statute describes providing 'access' to those records."

{¶ 36} Unlike the majority, I would resolve the union's first proposition of law on the ground that the union waived that argument. Waiver is the voluntary relinquishment of a known right. *See Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St.3d 275, 278, 690 N.E.2d 1267 (1998), citing *State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Dirs.*, 75 Ohio St.3d 611, 616, 665 N.E.2d 202 (1996). "Persons may either expressly or impliedly waive statutory provisions intended for their own benefit, but statutory provisions cannot be waived when they are intended for the benefit of others." *State ex rel. Wallace v. State Med. Bd. of Ohio*, 89 Ohio St.3d 431, 435, 732 N.E.2d 960 (2000), citing *Brannock v. Brannock*, 104 N.M. 385, 386, 722 P.2d 636 (1986); *see also State v. Ventura*, 101 Ohio Misc.2d 15, 19, 720 N.E.2d 1024 (C.P.1999).

{¶ 37} Because the Public Records Act afforded the union a statutory benefit that it expressly or impliedly waived, the union cannot rely on Cleveland's purported violation of the statute in its mandamus action. Still, the union argues that R.C. 149.43(B)(7)(a) required Cleveland to "transmit" a copy of the public records it requested rather than simply provide access to the records.

{¶ 38} Our main objective in applying a statute is to determine and give effect to the legislature's intent, *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995), which must be determined primarily from the language of the statute itself, *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784

N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). This court has explained:

> "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation, and the court has no right to look for or impose another meaning. In the case of such unambiguity, it is the established policy of the courts to regard the statute as meaning what it says, and to avoid giving it any other construction than that which its words demand. The plain and obvious meaning of the language used is not only the safest guide to follow in construing it, but it has been presumed conclusively that the clear and explicit terms of a statute expresses the legislative intention, so that such plain and obvious provisions must control. A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself, and any attempt to make it clearer is a vain labor and tends only to obscurity."

*Jasinsky v. Potts*, 153 Ohio St. 529, 534, 92 N.E.2d 809 (1950), quoting 50 American Jurisprudence, Statutes, Section 225.

{¶ 39} R.C. 149.43(B)(7)(a) states:

> Upon a request made in accordance with division (B) of this section and subject to division (B)(6) of this section, a public office or person responsible for public records *shall transmit a copy of a public record* to any person by United States mail or by any other means of delivery or transmission within a reasonable period of time after receiving the request for the copy. The public office or person

> responsible for the public record may require the person making the request to pay in advance the cost of postage if the copy is transmitted by United States mail or the cost of delivery if the copy is transmitted other than by United States mail, and to pay in advance the costs incurred for other supplies used in the mailing, delivery, or transmission.

(Emphasis added.)

{¶ 40} The plain and unambiguous language of R.C. 149.43(B)(7)(a) requires that when a public-records request is made pursuant to R.C. 149.43(B), the public office or person responsible for the public record must "transmit a copy of the public record" subject to the requirements of R.C. 149.43(B)(6).

{¶ 41} R.C. 149.43(B)(6) states:

> The public office or the person responsible for the public record shall permit that person to choose to have the public record duplicated upon paper, upon the same medium upon which the public office or person responsible for the public record keeps it, or upon any other medium upon which the public office or person responsible for the public record determines that it reasonably can be duplicated as an integral part of the normal operations of the public office or person responsible for the public record. *When the person requesting the copy makes a choice under this division, the public office or person responsible for the public record shall provide a copy of it in accordance with the choice made by that person.*

(Emphasis added.)

{¶ 42} Reading the plain language of R.C. 149.43(B)(7)(a) and (B)(6) together, it is clear that the General Assembly provided a public-records requester benefits, which include the right for the requester to choose how the copy of the public record will be produced (i.e., the medium upon which the public record will be produced), and the right for the requestor to choose how the copy of the public record will be transmitted (i.e., United States mail, e-mail, or other methods). Once the public-records requester has made its choices under those statutes, the public office or person responsible for the records is required to comply with the requester's choices.

{¶ 43} Here, instead of sending an e-mail to the union including a copy of the public records the union requested, Cleveland sent an e-mail notification informing the union that responsive records had been uploaded to the Cleveland Public Records Center and that the union could access the records. The city told the union that in order for it to access the records, it needed to click on a hyperlink the city provided, to follow the instructions the city provided, and that the union could access the records a limited number of times and for a limited period of time.

{¶ 44} The evidence submitted to the court of appeals demonstrates that the union accessed and viewed the records responsive to its public-records request through the Cleveland Public Records Center on six occasions. The evidence also reveals that when the union could not download the responsive documents, Guzman assisted the union with downloading the documents. There is no evidence in the record that other responsive documents could not be downloaded by the union. The union accessed and viewed the responsive records through the Cleveland Public Records Center. The union also asked the city to fix the problems it had with downloading the documents, and the city fixed those problems. Based on those facts, the union waived its argument that the city violated its duties under R.C. 149.43(B)(7)(a).

**{¶ 45}** While this determination ends my analysis of the issues the union raised under its first proposition of law, I am compelled to respond to the majority's interpretation of the word "transmit" in R.C. 149.43(B)(7)(a). The majority incorrectly interprets that word in contravention of its plain and unambiguous meaning in determining that the union failed to preserve its argument that Cleveland did not comply with its duties under the Public Records Act.

*B. The plain and unambiguous language of R.C. 149.43(B)(7)(a)*

**{¶ 46}** In reaching its conclusion that the union failed to preserve its argument that Cleveland failed to comply with its duties under the Public Records Act, the majority paraphrases the statutory language in R.C. 149.43(B)(7)(a). It omits from the statute the direct object of "transmit." The full text of the statute demonstrates that the word "transmit" is followed by the phrase "a copy of a public record." That is, to reach its conclusion regarding the statute's meaning, the majority construes the word "transmit" in isolation from the words around it—"a copy of a public record"—and thereby evades the plain and unambiguous language of R.C. 149.43(B)(7)(a).

**{¶ 47}** The "words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012). Interpreting the word "transmit" outside its statutory context, the majority appears to convince itself that Cleveland's sending the union an e-mail containing a hyperlink to the public records complied with R.C. 149.43(B)(7)(a). But Cleveland did not comply with the statute. The phrase "a copy of a public record" cannot "be meaningless, else [the legislature] would not have been used [that word]." *United States v. Butler*, 297 U.S. 1, 65, 56 S.Ct. 312, 80 L.Ed. 477 (1936). When the word "transmit" is read in context with the direct object—"a copy of a public record"—the intent of the General Assembly is plain and unambiguous. The public office or person responsible for the public

record must provide the requester *a copy* of the requested public record, not something else.

{¶ 48} The majority rationalizes its reading of the statute by citing to the decision of the court of appeals below and stating that "there is little difference between clicking on a hyperlink in an e-mail and clicking on an attachment to an e-mail." Majority opinion at ¶ 11. It says that "[t]o hold otherwise would establish an overly technical and unnecessarily narrow meaning of 'transmit' in the Public Records Act, R.C. 149.43(B)(7)(a)." *Id.*

{¶ 49} There are two takeaways from the majority's determinations. First, the majority, like the court of appeals, recognizes that there is a difference between providing a copy of a public record and providing a hyperlink to the public record. Second, by relying on its "overly technical and unnecessarily narrow meaning" hyperbole, the majority acknowledges that it is casting aside our plain-and-unambiguous standard of statutory construction for something else.

{¶ 50} In my view, the hyperlink that Cleveland sent to the union was not "a copy of a public record." Rather, the e-mail notification from Cleveland informed the union that it would have to produce the public records it requested on its own. The hyperlink connected the union to a login portal on the Cleveland Public Records Center. After the union logged onto the records center, it could access and view the records. When the union was unable to download the records, it notified Cleveland that "[n]one of the files can be downloaded." Despite that there might be little or de minimis difference between attaching a copy of public records to an e-mail, as the union requested, and sending an e-mail containing a hyperlink to the records, the General Assembly determined that it is the public office—here, Cleveland—that had to comply with the requester's preference. R.C. 149.43(B)(6) and (B)(7)(a).

{¶ 51} The Eighth District recognized that there is a difference between sending an e-mail with a copy of public records attached to the e-mail and sending

18

an e-mail containing a hyperlink to the records. The Eighth District simply decided that the difference was not significant enough and called the difference "de minimis." 2019-Ohio-1889, ¶ 5. The majority also recognizes a difference, or else its opinion would say that there is "no difference" instead of "little difference." By ignoring this difference, regardless of it being "de minimis" or "little," and by rubberstamping the hyperlink method of production and transmission, both the court of appeals and the majority have determined that it is acceptable for a public office to take away the statutory right of the people to choose how they want their requested public records to be produced and transmitted and have thereby limited the people's right to access public records and weakened the Public Records Act.

{¶ 52} There is no support in the text of R.C. 149.43(B)(7)(a) for the majority's decision today. Without textual support, the majority is merely deciding what it would like the statute to say rather than interpreting what it says. We should resist the temptation to "soften the clear import" of the legislature's "chosen words [even if the] * * * words lead to a harsh [outcome] * * *. [D]eference to the supremacy of the Legislature, as well as recognition that [members of the legislature] typically vote on the language of a bill," *United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), citing *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), is our obligation. "A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. [A judge] must not read in by way of creation." Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 533 (1947).

{¶ 53} In reality, it is the majority that establishes an "unnecessarily narrow meaning," majority opinion at ¶ 11, of the word "transmit" by construing it in isolation. And while to the majority there might be "little difference" between the methods of production, majority opinion at ¶ 11, and a "de minimis" difference to

the court of appeals, 2019-Ohio-1889 at ¶ 5, " '[a] judicially created "good sense" rule' cannot override our precedent that only the General Assembly determines public policy as to public-records access," *State ex rel. Pietrangelo v. Avon Lake*, 146 Ohio St.3d 292, 2016-Ohio-2974, 55 N.E.3d 1091, ¶ 35 (Kennedy, J., dissenting), quoting *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 44, citing *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 36-37.

### C. The union did not abandon its R.C. 149.43(B)(6) argument

{¶ 54} The majority dispenses with the union's argument that Cleveland violated R.C. 149.43(B)(6) by asserting that the union failed to raise that argument in the court of appeals. But as explained below, the union did not abandon that argument. First, compliance with R.C. 149.43(B)(6) is required by the text of R.C. 149.43(B)(7)(a). Second, the union did make that argument in the court of appeals (in fact, the court issued a decision on that issue).

{¶ 55} As set forth above, R.C. 149.43(B)(7)(a) requires the public office or person responsible for a public record to comply with the requirements of R.C. 149.43(B)(6). The majority ignores this requirement and fails to recognize the plain and unambiguous language of R.C. 149.43(B)(7)(a) in the context of the public-records-requests scheme the legislature enacted. However, "[i]n ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988), citing *Bethesda Hosp. Assn. v. Bowen*, 485 U.S. 399, 403-405, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988), and *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 220-221, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). Whether Cleveland complied with R.C. 149.43(B)(6) is an essential aspect of the union's argument based on R.C. 149.43(B)(7)(a).

{¶ 56} Additionally, in its complaint for a writ of mandamus, the union alleged that it had asked for "an emailed copy of the application files of and test reports" for a list of named people in relation to the open position with the city. Cleveland acknowledged receipt of the public-records request and told the union that it would process the request "in accordance with the public records laws." The union filed its complaint for a writ of mandamus on the basis that Cleveland had "not produced any public records" and had not denied the existence of the records the union sought or claimed that the records were exempt from disclosure.

{¶ 57} Cleveland filed in the court of appeals a certification of the records it had produced to the union. In response to Cleveland's certification, the union filed a reply arguing that merely providing "access" was inconsistent with Cleveland's duties under R.C. 149.43(B)(7). Citing the full text of R.C. 149.43(B)(7)(a), the union argued that Cleveland had failed to provide the union the public records it sought.

{¶ 58} In its statement of the facts, the Eighth District stated that the union had made its public-records request by e-mail and requested that "the records be sent by email." 2019-Ohio-1889 at ¶ 1. The court then outlined the arguments of the parties and noted that the union alleged that Cleveland had failed to comply with its request for public records "because it had provided a link to the records that was hard to open and had not transmitted the records directly." *Id.* at ¶ 4.

{¶ 59} Without citing the statute or engaging in any statutory-construction analysis, the court of appeals simply concluded that "[t]he difference between transmitting the records and providing a link to the records was de minimis." *Id.* at ¶ 5. But the duty of a court when construing the language of a statute is to give effect to the words of the statute. "[Courts] do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness or reason. [Courts] take * * * statute[s] as [they] find [them]. *Anderson v. Wilson*, 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004 (1933). And the plain and

unambiguous language of R.C. 149.43(B)(7)(a) requires that when a public-records request is made pursuant to R.C. 149.43(B), the office or person responsible for the record "transmit a copy of [the] public record" subject to the requirements of R.C. 149.43(B)(6). Therefore, the union did preserve its argument based on those provisions.

{¶ 60} As set forth above, the language of R.C. 149.43(B)(6) plainly provides that the public-records requester has the authority to choose the form in which the requested records will be produced and how they will be transmitted. Once that choice is made, the office or person responsible for the public record is required to provide the requester a copy of the public record by transmitting it in the manner the requester chose. The General Assembly used the term "shall" in both R.C. 149.43(B)(6) and (B)(7)(a) in explaining the duties that the office or person responsible for a public record has when responding to a public-records request. A basic rule of statutory interpretation is that the word "shall" is "construed as mandatory unless there appears a clear and unequivocal legislative intent" otherwise. *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 271 N.E.2d 834 (1971), paragraph one of the syllabus; R.C. 1.42 ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage").

{¶ 61} There is no "clear and unequivocal" intent by the General Assembly to make the duties described in R.C. 149.43(B)(6) and (B)(7)(a) anything other than mandatory. Therefore, there is no room to declare that the statutory language is discretionary or directory and there is no statutory authority for declaring that Cleveland complied with the union's public-records request.

D. *The majority opinion frustrates the purpose of the Public Records Act*

{¶ 62} Regarding the interpretation and application of statutory language, "[t]he presumption against ineffectiveness ensures that a text's manifest purpose is furthered, not hindered." Scalia and Garner at 56. The presumption against

ineffectiveness flows from the belief that "interpretation always depends on context, * * * context always includes evident purpose, and * * * evident purpose always includes effectiveness." *Id.* While the majority may not perceive that their turning a blind eye to the plain and unambiguous language of the Public Records Act obstructs its manifest purpose, it does.

{¶ 63} " ' "[P]ublic records are the people's records, and * * * the officials in whose custody they happen to be are merely trustees for the people." ' " *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 81, 526 N.E.2d 786 (1988), quoting *Dayton Newspapers v. Dayton*, 45 Ohio St.2d 107, 109, 341 N.E.2d 576 (1976), quoting *State ex rel. Patterson v. Ayers*, 171 Ohio St. 369, 371, 171 N.E.2d 508 (1960). The Public Records Act codifies the people's right to access governmental records and permits the people to scrutinize their government, *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, ¶ 36, "by ensuring that governmental functions are not conducted behind a shroud of secrecy," *State ex rel. Wallace*, 89 Ohio St.3d at 438, 732 N.E.2d 960. It reflects the state's policy that "open government serves the public interest and our democratic system," *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20, and "reinforce[s] the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor," *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 17. As this court explained in *Kish*,

> the General Assembly is the ultimate arbiter of policy considerations relevant to public-records laws * * * and it is for the legislature to "weigh[] and balance[] the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure."

(Citations omitted.) *Id.* at ¶ 44, quoting *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 172, 637 N.E.2d 911 (1994). But today the majority chooses what Ohio's policy regarding the production and transmission of public records should be and impermissibly shifts the burdens of production and transmission of public records to the requester, burdens that the General Assembly statutorily placed on the office or person responsible for the records. Except for the requirement that the records requester make the initial request, the legislature places no burden on the people's right to inspect, obtain a copy of, or receive public records so the people can scrutinize their government. *See* R.C. 149.43(B)(1). After weighing and balancing the public-policy considerations, the legislature placed the remainder of the burdens upon the government.

{¶ 64} The Public Records Act requires the government to "facilitate broader access to public records" by requiring the office or person responsible for a public record to "organize and maintain public records in a manner that they can be made available for inspection and copying" and to make "readily available to the public" a current copy of the office's records-retention schedule. R.C. 149.43(B)(2). It requires the government to promptly prepare and make available "all public records responsive to a request" for inspection "at all reasonable times during regular business hours" and to make copies of requested records available within a reasonable period of time. R.C. 149.43(B)(1). If the request is "ambiguous or overly broad" or the requester has "difficulty in making a request for copies or inspection," the office or person responsible for the public record must give the requester the "opportunity to revise the request" and must inform the requester how "records are maintained * * * and accessed" to assist the person making the public-records request. R.C. 149.43(B)(2).

{¶ 65} Absent a state or federal law requiring it, an office or person responsible for a public record may not "limit or condition the availability of public

24

records by requiring disclosure of the requester's identity or the intended use of the requested public record." R.C. 149.43(B)(4). The government has a duty to "make available all of the information within the public record that is not exempt." R.C. 149.43(B)(1). If the government denies a request, in whole or in part, it is required to explain why the request was denied, including "legal authority" for the denial, and if the request was made in writing, the explanation for the denial must be in writing. R.C. 149.43(B)(3). And if the office or person responsible for a public record impermissibly redacts or denies access to the public record, the office is liable for the requester's costs, attorney fees, and statutory damages. R.C. 149.43(C).

{¶ 66} And it is the requester who is permitted to choose how the requester wants the records to be produced. R.C. 149.43(B)(6). "When the person requesting the copy makes a choice under [R.C. 149.43(B)(6)], the public office or person responsible for the public record shall provide a copy of it in accordance with the choice made by that person." *Id.* And the office or person responsible for a public record is required to "transmit a copy of [the] public record" in accordance with R.C. 149.43(B)(6) and in the manner that the public-records requester chooses. R.C. 149.43(B)(7)(a).

{¶ 67} "There is a basic difference between filling a gap left by [the legislature's] silence and rewriting [the language that the legislature] has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). Here, the General Assembly left no gap for the majority's decision to fill.

{¶ 68} The General Assembly placed all burdens regarding the production and transmission of public records on the custodians of the public records—the government. The Public Record Act provides no authority for an office or person responsible for a public record to ignore the commands of the statute, rewrite the statute, shift its statutory burdens to the public-records requester, or limit the public-

records requesters access to the records. But that is exactly what Cleveland did here and what the majority sanctions. Had Cleveland simply followed the law and sent the union a copy of the union's requested records by e-mail, the union would have had immediate perpetual access to the records.

{¶ 69} We have no authority to ignore unambiguous statutory language or to rewrite a statute. *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 18. "It is not the role of the courts 'to establish legislative policies or to second-guess the General Assembly's policy choices.' " *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35, quoting *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212. If the General Assembly enacted something into law that is different from what it intended, then it should amend the relevant statutes to conform them to its intent. "It is beyond [a court's] province [however] to rescue [the legislature] from its drafting errors, and to provide for what [the court] might think * * * is the preferred result." *United States v. Granderson*, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994). Anything less than adherence to our rules of statutory construction violates our role under the Constitution.

{¶ 70} Therefore, I concur in judgment only.

_____

Climaco, Wilcox, Peca & Garofoli Co., L.P.A., and Stewart D. Roll, for appellant.

Barbara A. Langhenry, Cleveland Director of Law, and Craig J. Morice, Assistant Director of Law, for appellees.

_____